[No. 1267.   Decided March 27, 1894.]

THE UNION SAVINGS BANK AND TRUST COMPANY, *Appellant*, v. GEORGE GELBACH, *Treasurer, Respondent*.

COUNTY WARRANTS — INTEREST — EFFECT OF LAW CHANGING RATE.

Under the laws of this state a county warrant is a contract to pay money, and, if not paid on presentment to the county treasurer, the legal rate of interest in effect at such time enters into the contract as a part thereof, and cannot be affected by a subsequent law reducing the rate.   (HOYT and ANDERS, JJ., dissent.)

· *Appeal from Superior Court, Thurston County.*

*Crowley, Sullivan & Grosscup*, and *A. E. Buell*, for appellant.

*Milo A. Root*, for respondent.

The opinion of the court was delivered by

STILES, J. — Appellant being possessed of warrants issued by Thurston county in 1891-2, upon the call of respondent, who is treasurer of the county, presented them to him for payment.   The treasurer offered payment of the principal with interest at ten per cent. per annum until June 7, 1893, and at eight per cent. since that date.   The reason for the difference in the rate of interest offered was that, whereas, prior to June 7, 1893, the legal rate of interest in this state was ten per cent., the act of February 21, 1893 (Laws, p. 29), which took effect June 7th, reduced that rate to eight per cent.

The statute, Gen. Stat., § 216, requires the treasurer, when he has not funds to pay a county order or warrant presented, to indorse it "Not paid for want of funds," with the date of the indorsement over his signature; and from this time it is declared the order shall draw *legal* interest.

32—8 WASH.

The contention of the appellant is—(1) That the language and intention of the act of 1893 are wholly prospective; (2) whatever may have been the intention, it was not within the power of the legislature to change the rate which prevailed at the time when the orders were presented and indorsed.

In *Saunders v. Carroll*, 12 La. An. 793, the first of the above points was well covered, and it was held that a new interest law would not be considered as applicable to cases which arose previous to its passage unless the legislature, in express terms, declared such to be its intention.    We have no idea that our legislature of 1893 contemplated, for one moment, that public obligations of this class would be repudiated to the extent of one-fifth of the interest thereon, by the passage of the act of February 21st.    The act itself bears no evidence of any such intention.    But a disposition of the case upon this point would be far from satisfactory, and we shall consider it upon the other, as well.    It is agreed that if the provision in regard to interest at the rate of ten per cent. entered into and became a part of the contract, the legislature could not impair it by making the reduced rate applicable to the warrant, either before or after the passage of the law; but if the exaction of interest is mere penalty for the unlawful act of detaining money due, then it is conceded that it is changeable with the change in the law.

A county order or warrant is lacking in one of the qualities which make notes, bills, checks, etc., commercial paper, viz., "negotiability."  This lack, however, is due entirely to the fact that it is open to all defenses which might have been made to the claim on which it was founded. In *Allison v. Juniata County*, 50 Pa. St. 351, it was held, following *Dyer v. Covington Township*, 7 Harris, 200, that such warrants were not even contracts upon which a suit could be maintained, but that the original indebtedness was

the sole ground of action.    There are some other cases of
like tenor, perhaps, but they do not express the current law
of such matters.    Dillon, Mun. Corp. (4th ed.), §§ 485–7,
and Daniel, Neg. Inst., §§ 427–30, treat these warrants as
only something less in negotiability than notes or bonds,
and therefore not commercial paper.    This court, in *Sey-
mour v. Spokane*, 6 Wash. 362 (33 Pac. 832), maintained
a doctrine exactly the contrary of that put forth in Penn-
sylvania and a few other states concerning the payment of
interest on warrants where no statute required it.

But however the case may be elsewhere, or in other
cases, we are satisfied that it cannot be held here that a
county warrant is not a contract to pay money.    Our stat-
utes governing the presentation and allowance of claims
against counties, and the issuance of warrants for the sums
allowed, plainly contemplate that the transaction between
the claimant and the county is to be merged in the warrant,
and settled by it, just as fully as is a store account between
a merchant and his customer when the latter gives his note
for the balance found due upon the former's books.    One
of the principal reasons we find given in the cases alluded
to for not allowing interest on warrants, where there has
been no custom and no statute, is that people who have
dealt with a county have, by advancing the price of their
goods, discounted the face of their claims before their
warrants are issued; but here we have the law making the
payment of interest mandatory, so that one who deals with
a county knows that he is expected to sell to it on a cash
basis the same as he does to a private individual, making
himself whole for delay in payment out of the interest re-
quired to be paid him.    When the dealer delivers goods to
the county it is just as much implied that he shall have
interest at the legal rate from the time his warrant is pre-
sented, as that he shall have his claim passed upon and a
warrant issued for the amount found due.    But it is said

that the right to interest exists only because it is given by statute as a penalty for the county's non-payment on demand, to which the sufficient answer is, that every right which a creditor has against a county is to precisely the same extent statutory. The right to sue, the right to have a claim allowed, the right to have a warrant, and to have it paid, all depend on statutes which are none the less necessary to the existence of any of these rights because they are universal accompaniments of county organization. The obligation to pay interest is no less one of contract when the claim for interest is based upon a transaction growing out of contract, because the general burden of paying interest is imposed upon the county by a statute. Its obligation to pay the principal has the same foundation.

The only question which remains, then, is, whether, since the warrant has read into it a contract to pay "legal interest," it can be held that the rate is to vary as the legal rate is changed by statute from higher to lower, and *vice versa.* It is claimed that there is notice in the statute itself that the rate which is legal at one time may be changed later, and that the warrant holder takes the risk of the change. To support this proposition a number of cases are cited which hold the rule to be that where a note provides for "interest" from date until maturity, the rate recoverable after maturity may be changed. These cases are based upon the principle that the interest before the maturity is based upon the contract, while that after is dependent upon the rules as to damages. But no case is produced which holds, nor is it claimed by respondent, that where a note provides for "interest," or "legal interest" until maturity, any change in the interest law has been held to apply so as to raise or lower the rate recoverable up to maturity; that is, the universal holding is that where the right to interest is based on the contract it is the legal rate *at the date*

*of the contract* which must prevail and cannot be altered. *Koshkonong v. Burton,* 104 U. S. 668.

Now a warrant, under our statutes, is a promise to pay it in its order of issue, when money applicable to it comes into the treasury, and its maturity, by analogy with a note, is the time when the treasurer gives notice of his readiness to pay it, and stops the interest.    Respondent says that if a warrant is considered as·a contract it is one which becomes due instantly upon presentation, and therefore the interest upon it, like that upon a past due note, is only allowed as damages.    But there is this difference: A note can be sued upon, judgment taken, execution issued, and property levied upon and sold and the debt paid; but no action lies either upon a warrant or the original debt.    In the case of the note, interest after maturity or judgment is the penalty inflicted for the wrongful failure · to pay; but with the warrant the forbearance enforced by the condition· of the public treasury is the reason at bottom of the allowance of interest.    It is the private debtor's fault that he does not pay, but it is not the fault of the county, which must exist, but cannot pay faster than it receives the means to pay with.    It is also said that the law allows interest at different rates, from time to time, according as the value of money is supposed to vary, and purely as compensation for the detention of money. Such is the theory of it when it is allowed as a penalty, but as we have seen this theory has no application when the payment of interest is based upon a contract, although that contract merely provides for the legal rate. Respondent is forced to admit that if, instead of passing a new law merely lowering the legal rate, the legislature had simply repealed § 2795 of the General Statutes, upon his theory, all interest on county warrants would have stopped June 7th; or if the rate had been doubled, interest on such warrants after that date at twenty per cent. would have

been recoverable. Such a conclusion would, alone, be sufficient to stamp such a theory as wholly unreasonable. Public policy can justly have but little to do with such ·matters, but the importance of maintaining the public credit is not to be estimated at nothing. Repudiation of public obligations is not to be thought of in these days, and cannot be tolerated in the guise of reduced interest on past transactions any more than would a clipping of the principal. Nor, as has been said before, do we believe the legislature had any such intention in enacting the new law. Other statutes make ample provision by which the counties can at any time fund their legal indebtedness at as low rates as money can be procured for, thereby paying off, at a stroke, all their high interest bearing warrants and placing themselves on a cash foundation. In the meantime they ought to, and under the law can, do no less than meet their obligations upon the same terms as a private person. Having contracted to pay interest ·on their warrants at ten per cent., that rate is due to the holder.

Judgment reversed, and remanded with directions to set aside the order of dismissal and proceed with the cause.

DUNBAR, C. J., and SCOTT, J., concur.

HOYT, J. (*dissenting*). — I am unable to agree with the conclusions of the majority announced in the foregoing opinion. Under well settled rules of law, money due and unpaid, if the amount thereof is liquidated, will draw interest at the legal rate. It is equally well settled that an exception to such rule exists in favor of the sovereignty and of its necessary agencies in the government; that under such exception sums due and unpaid will not draw interest unless there is express statutory provision therefor, or such universal custom and acquiescence therein as to have the force of express legislation. It is conceded that counties are necessary agencies of the state, and are entitled to the

benefits of this exception.    It must follow that the war-
rants in question, being claims against a county, will only
draw interest by virtue of the express provision of the law
which provides that, after they have been presented and
payment refused for want of funds, they shall draw inter-
est at the legal rate.    Without this provision the warrants
would draw no interest, and the sole object of its enactment
was to place counties upon the same basis, so far as the
payment of interest on money due was concerned, as pri-
vate individuals were without any legislation.    If the
money was due from a private individual, it would draw
interest at the legal rate which was or should be established
during the time that payment was delayed; and the fact
that a certain rate was the legal rate at the time the money
became due would not establish that as the necessary rate
until payment.    If the legislature should change the legal
rate, the changed rate would obtain from the date the law
making the change went into effect.

If a note is given bearing a certain rate of interest, and
nothing is said about the rate which it shall draw after
maturity, the great weight of authority is to the effect that
after such maturity it will only draw interest at the legal
rate unaffected by the contract rate set out in the note.    In
a case of this kind there would be much greater reason
that the rate of interest as specified in the contract should
continue to attach to the use of the money after a violation
of its terms than that the rate in existence at the time a
warrant was presented for payment should continue to be
the rate as to the money represented by such warrant, un-
influenced by the fact that the legal rate had been changed
by the legislature.

What is said in the opinion of the majority as to the
right of one furnishing goods for the county growing out
of the rate of interest which prevailed at the time such
goods were furnished, needs no attention, for the reason

that it is not contended on the part of the appellant that the rate of interest upon the money due for such goods would be established prior to the time of the issue and presentation of the warrant.

Something is said about public policy, but in my opinion, considerations of that kind can have no influence in the determination of this question for the reason that the law seems to me clear, when the object to be accomplished by the legislation is taken into consideration. If from the language of the provision it was clear that the legal rate named therein referred exclusively to such rate at the date of the presentation of the warrant, such fact would not warrant the construction placed thereon, for the reason that the rate prescribed was not a contract rate, but was in the nature of a penalty for the non-payment of the money, like the penalty imposed for the non-payment of a judgment, which it is conceded is within the control of the legislature unaffected by the rate of interest established by law at the date of the entry of the judgment. But as I read the provision it has no particular reference to the date of the presentation of the warrant, but is simply a general provision applying to all warrants by which it is provided that during the time the money due thereon is unpaid such money shall draw interest at such rate as from time to time shall be established by law as the legal rate. The construction contended for by the appellant would, in my opinion, only be warranted if the statute was to the effect that after the presentation of the warrant it should draw interest at the legal rate at the date of its presentation. The general language used, and the statement that the warrant shall draw interest at the legal rate, when fairly interpreted, should only be held to mean that the legal rate referred to is that prevailing from time to time while the warrant remains unpaid.

I am unable to find anything in the language used to show an intention on the part of the legislature to create a legislative contract. It only appears therefrom that the state and its counties should be put upon the same footing as individuals, and be required to pay for the use of money retained after it is due a fair compensation, and such compensation is fixed at the legal rate, which is fixed by the legislature from time to time as the value of the use of money changes. There is no reason why the legislation should be so construed as to compel the payment of more than a fair compensation for the use of the money. Such, however, is the result of the construction given by the majority. The judgment directed will require the county of Thurston to pay for the use of the money ten per cent. when the use has been by law declared to be worth only eight per cent. Stress is placed upon the fact that the retention of the money by the county being caused by the state of its treasury should put it upon a different basis than an individual whose neglect to pay is caused by want of funds. I can see no reason whatever for so discriminating against a county, which is but one of the agencies through which the state does its business.

ANDERS, J., concurs.