[No. 3632. Decided June 18, 1900.]

THE STATE OF WASHINGTON, *on the Relation of Capital National Bank*, v. C. W. YOUNG, *as Treasurer of the State of Washington.*

STATE WARRANTS—RATE OF INTEREST—WHEN BEGINS TO RUN.

State warrants draw interest only from the date of their presentation to the treasurer and his indorsement thereon, "Not paid for want of funds," at the legal rate prevailing at the date of presentation and not that in force at the date of issuance, under the statutes of this state.

*Original Application for Mandamus.*

*George C. Israel,* for relator.

*Thomas M. Vance,* Assistant Attorney General, for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The act of the territorial legislature of December 2, 1869, provided:

"Sec. 1. That it shall not be lawful for the territorial treasurer to pay any money out of the territorial treasury except it be on a warrant drawn by the territorial auditor.

"Sec. 2. Upon the presentation of any territorial warrant or warrants to the territorial treasurer, it shall be his duty, if there be no funds in the territorial treasury, to indorse on said warrant or warrants, 'not paid for want of funds,' with the day and date of said presentation, and said warrant or warrants shall from said date draw legal interest till paid." Session Laws 1869, p. 408.

Subsequent statutes required the territorial treasurer to pay warrants in the order of their issuance, to publish a call for outstanding warrants whenever he had funds on hand, exceeding a fixed amount, applicable to the redemption of such warrants, and provided that warrants shall cease to draw interest at a fixed time after the publication

of the call.    (Bal. Code, §§ 155-164.)    These acts were carried forward and made a part of the state statutes by virtue of § 2 of article 27 of the constitution.    In 1895 the legislature passed an act "to establish the legal rate of interest in the state of Washington, and to prevent usury," § 3 of which is as follows:

" All state, county, city, town and school warrants, and all warrants or other evidences of indebtedness drawn upon or payable from any public funds, shall bear interest at a rate not greater than eight per centum per annum, unless a less rate be specified therein."    Session Laws 1895, p. 349.

In 1899 (Session Laws 1899, p. 128) another act relating to the same subject was passed, which contained the following section:

" Sec. 3.    All state warrants shall bear interest at a rate not greater than five (5) per centum per annum, unless a less rate be specified therein, and shall be paid by the treasurer in the order of their number, date, and issue and shall cease to draw interest at the expiration of 10 days from and after the date of the first publication of any call made by the treasurer for the payment of warrants."

Prior to the time the last named act went into effect, the state auditor drew a warrant upon the state treasurer, which was presented for payment after that act became operative.    The treasurer, not having funds on hand applicable to its payment, indorsed the warrant "Not paid for want of funds," with the date of the indorsement.    The warrant was subsequently called, and on its presentation for payment the treasurer tendered to the holder its face value, with interest from the date of the indorsement at the rate of five per cent. per annum.    This sum the holder refused to accept, and brings mandamus in this court to compel the treasurer to pay interest upon the warrant at the rate of eight per cent. per annum.    The question presented is, what rate of interest does the warrant bear?

The relator contends that the obligation of the state to pay interest is one of contract, and arises when the services are performed which authorize the issuance of the warrant, and that any subsequent act of the legislature changing the rate of interest is void as to warrants issued for such services, because it violates the obligation of a contract. We cannot think this contention sound. The obligation of the state to pay interest arises, not from contract, but from statute; and, unless a statute explicitly declares that a state warrant shall bear interest, there is no obligation on the part of the state to pay interest thereon. Reading the statutes above cited together, as we must, it is clear that the legislature intended that all state warrants should be presented to the state treasurer for payment before any obligation should arise for the payment of interest, and that they should bear interest only from the date of such presentation. In fact, this much is conceded by the relator. This being true, it seems to us to follow that the "legal rate" of interest, which the statute provides the warrant shall bear after its presentation for payment, must mean the legal rate prevailing at the time the warrant is presented. Up to that time, by the very terms of the statute, no obligation on the part of the state to pay interest exists; and it is not consistent wih any rule of statutory construction to say that a statute creating an obligation to pay interest at the legal rate from a particular time, without further specification, means a rate other than the one prevailing at the time the obligation arises.

The cases of *Union Savings Bank & Trust Co. v. Gelbach,* 8 Wash. 497 (36 Pac. 467, 24 L. R. A. 359), and *State ex rel. Theis v. Bowen,* 11 Wash. 432 (39 Pac. 468), are cited as establishing a different doctrine. An examination of these cases, however, will show that the question presented here was not before the court in either of them. In the former, it is held that a county warrant, after it

becomes an interest bearing obligation by presentment to the county treasurer for payment, is not affected by a subsequent statute reducing the rate of interest; and in the latter, the court applied the same rule to state warrants. It is true that in the first case it was said that the provision of the statute in regard to interest "entered into and became a part of the contract," and that "the universal holding is that, where the right to interest is based on the contract, it is the legal rate at the date of the contract which must prevail;" but it must be remembered that in using the language quoted the court was speaking to the question presented in that case, viz., whether, after a warrant has become an interest bearing obligation, "it can [to quote from the opinion] be held that the rate is to vary as the legal rate is changed by statute from higher to lower, and *vice versa*," and not to the question presented by the record in the present case.   That the case was not understood, either by the concurring or dissenting members of the court who took part in it, as deciding the question presented here, is emphasized by the opinion in the latter case cited.   In that case, after stating that there was no real distinction between county warrants and state warrants, so far as the question of the power of the legislature to change the rate of interest after the warrant became an interest bearing obligation is concerned, it was said:

"As to one class the statute provided that they should draw the legal rate of interest; as to the other class the statute, or that which had the force of a statute, made a like provision.   If in the one class the legal rate prevailing at the time payment was refused was so impressed that it would not be affected by a change in such rate, there is no reason why such rate should not be held to have been in like manner impressed upon the other class. . . .   And in our opinion the same line of reasoning will compel us to hold that interest must be paid upon

state warrants at the legal rate in force at the date of their presentation to the treasurer for indorsement."

The writ will be denied.

ANDERS and REAVIS, JJ., concur.

DUNBAR, C. J. (dissenting)—I dissent. It is the last act of the legislature that is to be construed. I am convinced that it was not the intention to make the law retroactive, by making it apply to warrants issued before the law went into effect; or to make its interest bearing capacity depend upon the accident of its presentation, rather than the material fact of its issuance. The writ should issue.