PAULY JAIL BLDG. & MFG. CO. et al. v. JEFFERSON COUNTY.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1908.)

No. 1,473.

1. COUNTIES—ACTIONS—PLEADING—ISSUES—MATTERS TO BE PROVED.

Where, in an action on county warrants given for the construction of certain jail cells and not paid for want of funds, the complaints alleged that the warrants were payable out of a fund raised from the sale of bonds, and that though the money raised from the bonds was authorized to be used for other purposes than for the payment of the courthouse and jail, none of it had been paid out in refunding prior indebtedness, the county having denied its possession of any of the money, it would be presumed that it was paid out for other proper purposes, and hence defendant's admission that it had received the money did not shift the burden of proof to defendant to show what disposition had been made thereof.

2. PLEADING—FORM OF DENIAL—CONSTRUCTION.

A general denial followed by a specific denial of the same fact is improper, and, when pleaded, the general denial may be disregarded, or one of the denials stricken on motion, or defendant may be required to elect on which he will stand.

3. SAME—INCONSISTENT ALLEGATIONS.

In an action on county warrants, payable out of the proceeds of county bonds, a specific denial that defendant had on hand the sum mentioned in the complaint from the proceeds of the sale of the bonds was not inconsistent with a general denial of the allegation that it had not applied any part of such amount to the payment of prior indebtedness of the county.

4. COUNTIES—WARRANTS—SPECIAL FUNDS.

Where county warrants drawn for the construction of jail cells directed the treasurer to pay the payee the sum specified out of county funds not otherwise appropriated, the fact that the warrants also contained the words "for jail cells" did not make them payable from a special fund.

5. SAME—ASSENT OF PAYEE.

Where county warrants for jail cells payable out of funds of the county not otherwise appropriated were accepted by the payee with full knowledge of their terms and of the fact that there were no funds to pay them, the payee would be held to have assented, and agreed to look to the general funds of the county for payment.

6. SAME—"COUNTY WARRANT"—DEFINITION.

A "county warrant," under the statute of Washington, is a promise by the county to pay it when money applicable thereto comes into the treasury, its maturity by analogy to a note being the time when the county treasurer gives notice of his readiness to pay it and stop the running of interest.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, p. 1668.]

7. SAME—RIGHT OF ACTION—CONDITION PRECEDENT—DEMAND AND REFUSAL.

Where county warrants payable out of funds not otherwise appropriated were presented for payment, and stamped "not paid for want of funds," and there had been no refusal to pay out of a fund available therefor, the holders were not entitled to judgment against the county, the claim being liquidated, and the holders being entitled to resort to mandamus to compel payment out of funds applicable thereto.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, § 256.]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

On September 19, 1890, a special election was held by the voters of Jefferson county, state of Washington, whereby it was decided that county bonds in the sum of $225,000 should be issued to provide money to fund the outstanding warrant indebtedness of the county, and to build a courthouse and jail. Between June 23 and December 20, 1891, the county issued and sold the bonds so authorized for the sum of $232,341.29. On December 2, 1890, The Pauly Jail Building & Manufacturing Company, one of the plaintiffs in error, entered into a contract with Jefferson county, the defendant in error, by which the former was to construct certain steel cells in the basement of the county courthouse, then in the course of construction, for the sum of $17,278, payable 10 days after the completion of the work and the acceptance of the same by the board of county commissioners. The contract was performed by the company, and on May 4, 1892, the defendant in error issued to said company its warrants for $17,278. On the same day all of the warrants were presented to the county treasurer of the defendant in error for payment, and that officer indorsed thereon: "Not paid for want of funds." On November 17, 1905, said warrants were again presented for payment, and were not paid for want of funds. Certain of the bonds were transferred to John H. Rausch. The plaintiffs in error brought actions against the defendant in error to recover judgment on said warrants, and the causes were consolidated in the court below and tried as one action. The cases were tried upon the second amended complaints, in which the foregoing facts were set forth, and in addition thereto it was alleged that, under the law of the state of Washington authorizing the issuance of county bonds, it is provided that the money arising from the sale thereof shall be used only for the purpose for which the bonds are issued, and that of the money received by the defendant in error for the sale of said bonds but $110,873.40 was expended in the construction of the courthouse, "leaving of the proceeds of the said bonds unexpended the sum of $121,467.89," and it was alleged "that the defendant county never applied any of the money derived from the sale of said bonds to the payment of the county indebtedness existing when the aforesaid special election was called, nor has it expended or paid out any of the money derived from the sale of said bonds for the purpose for which said bonds were issued, excepting the sum of $110,873.40 as set out in the eighth paragraph of this complaint, and that the defendant has now in its possession the sum of $121,467.89 of the money derived from the sale of said bonds." "That the defendant county has never called any of said warrants for payment, but that it has always refused to pay the same on the alleged grounds that it has no funds to pay the same or any part thereof."

The answers contained, among other matters, the following: "That the said courthouse cost the said defendant, including extras and plans and specifications, the sum of $142,462.30, and said defendant specially denies that it has now on hand the sum of $121,467.89 of the proceeds of the sale of said bonds, and further denies that it has said sum or any sum whatever on hand derived from the sale of said bonds." Replies were filed denying all new matter alleged in the answers. A jury trial was waived, and the cause was tried before the court. No evidence was offered to sustain the allegation that the defendant in error had on hand the sum of $121,467.89 or any sum of the proceeds of the sales of the bonds, and the court among other findings found that at the times of the presentation of said warrants to the county treasurer on May 4, 1892, and November 17, 1905, and at the commencement of the action and at all times since, the treasurer of said county did not have in his custody or control any of the money derived from the sale of said bonds, and that none of said warrants have ever been called for payment. The court entered a judgment of nonsuit, "for the reason that plaintiff's evidence fails to show that there is in the possession or under the control of the said defendant any money or moneys derived from the sale of said bonds, or any money in the fund upon which the warrants in said suit are drawn to pay said warrants or any of them."

John P. Judson, for plaintiffs in error.
U. D. Gnagey, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the trial court erred in granting the nonsuit, for the reason that the money derived from the sale of the county bonds was a trust fund to which the plaintiffs in error had the right to look for the payment of their warrants, and which could be used only for the purpose for which the bonds were issued, and that the admission of the defendant in error that it received the money shifted the burden of proof as to the disposition made of the same, and bound the defendant in error to account therefor. We do not understand that by the pleadings the burden of proof was ever shifted. The money raised upon the bonds was authorized to be used for other purposes than for the payment for the courthouse and the jail. It was authorized to be used also in payment of outstanding warrants against the county. The defendant in error, having denied its possession of any of the money, the presumption would arise that it paid out the whole thereof for the purposes for which the bonds were authorized to be issued. The complaints, it is true, alleged that none of the money was paid out in refunding prior indebtedness, but the answers denied those averments, and no proof to the contrary was offered on the trial. The plaintiffs in error question the sufficiency of the denials on the ground that there is in each answer a general denial of the allegation combined with a specific denial that the defendant in error now has on hand the sum of $121,467.89. It is true that such a combination of denials is improper, and that, if an answer contain a general denial and a specific denial of the same fact, the general denial may be disregarded (Philip Schneider Brewing Co. v. American Ice Mach. Co., 77 Fed. 138, 23 C. C. A. 89) or one of the denials may be struck out on motion (Dennison v. Dennison, 9 How. Prac. [N. Y.] 246) or the defendant may be required to elect upon which he will stand (School District v. Holmes, 16 Neb. 486, 20 N. W. 721). But here the specific denial that the defendant in error has on hand the sum mentioned is not at all inconsistent with the general denial of the allegation that it had not applied any thereof to the payment of the prior indebtedness of the county. The theory of Code pleading is that there shall be brought to the attention of the court the real controversy, and that the parties shall be required to show in their pleadings wherein they agree and wherein they disagree. This was sufficiently done in the present case, and the plaintiffs in error, after going to trial on issues as made, cannot now raise the objection that no denial was made to the allegation that no part of the money raised upon the bonds was applied to the former indebtedness of the county.

But there is other ground on which the judgment is sustainable. It is to be observed that the warrants were not drawn on the special fund realized upon the sale of the bonds. The form of the warrants was as follows:

"State of Washington.

"The treasurer of the county of Jefferson will pay to the Pauly Jail Bldg. & Mnfg. Co., or order, the sum of one thousand dollars, out of the county funds not otherwise appropriated. Witness my hand and official seal this 4th day of May, 1892, for jail cells. James Seavey, Auditor of Jefferson County, Wash., By Newton W. O'Rear, Dep."

The words "for jail cells" do not make the instruments special fund warrants. Those words are appended evidently for the purpose of specifying the debt for the payment of which the warrants were drawn. They do not control the clearly expressed provision that the warrants are payable out of county funds not otherwise appropriated, and Jones v. Portland, 35 Or. 512, 58 Pac. 657, cited by the plaintiffs in error, is not an authority to the contrary. The warrant in that case was not made payable out of county funds not otherwise appropriated. The decision of the court was that it was payable out of a special fund, because it contained the recital that it was issued to pay for material furnished for a specific improvement, and because there was no claim that the city intended to pay for such improvement out of any fund except the one to be raised by assessment upon the abutting property. In addition to the expressed terms of the warrants in the present case, the time when, and the circumstances under which, they were issued all tend to indicate that they were not warrants upon a special fund. The money upon the bonds was obtained by the county prior to December 30, 1891. On May 4, 1892, the warrants were issued, and on that date were presented to the treasurer of the county, and indorsed by him: "Not paid for want of funds." Under those circumstances they were accepted by the Pauly Jail Bldg. & Mfg. Co., and having been so accepted, with full knowledge of their expressed terms and of the fact that there were no funds to pay them, the payee must be held to have assented and agreed to look to the general funds of the county for their payment.

The plaintiffs in error cite and rely upon Potter v. New Whatcom, 20 Wash. 589, 56 Pac. 394, 72 Am. St. Rep. 135, and New Orleans v. Warner, 175 U. S. 120, 20 Sup. Ct. 44, 44 L. Ed. 96. In the first of these cases, the warrant had been drawn on a special street improvement fund. A portion of the fund had been collected by the city treasurer and converted to his own use. The court held that the money paid in on the special assessment was a trust fund which the city was under obligation to preserve, and that it was liable therefore for the payment of the warrant. The object of the suit was to convert the special warrant into a general liability, the city denying all liability. The decision has no bearing upon the present case, for the reason that here the warrants sued on were not drawn against a special fund, and the city had acknowledged its general liability, and had issued its warrants for the same. Nor does the decision in New Orleans v. Warner add any light to the questions here involved. In that case the warrant sued upon was given for the purchase of a drainage plant, for which the city had promised to pay out of a fund to be created by drainage assessments. The court held that the city could not abandon its duty to create that fund and take steps to prevent the further collection of such assessments, and plead in defense to the warrants that it had, prior to the purchase of the drainage plant, paid off obligations theretofore created against the fund. It was the decree of the court that an account be taken of the drainage assessment and that there be a pro rata decree against the city if such fund were not sufficient to pay all the warrant holders in full. But it is urged that the plaintiffs in error were entitled to a judgment against the defendant

in error to the end that thereafter mandamus might issue to compel the payment thereof. But this argument ignores the nature of the liability of the defendant upon its warrants under the laws of the state of Washington. In Cloud v. Town of Sumas, 9 Wash. 399, 37 Pac. 305, the court said:

"If this action can be maintained upon the warrants which have been issued, then a like suit might be maintained upon the warrants issued in satisfaction of this judgment, and so on without limit. Clearly the law contemplates no such proceedings. The plaintiff already has the town's evidences of indebtedness, issued to him in regular form, and, if the treasurer should refuse to pay them in their regular order, he can resort to a mandamus to compel such payment."

But there has been no refusal to pay the warrants involved in the present suit, nor is any such refusal alleged in the complaints. There can be no refusal until there is a fund available, and the complaints alleged and the trial court found, that since the issuance of the warrants, there has been no fund out of which they could have been paid, and that they have not been paid, only for want of funds. In Savings Bank & Trust Co. v. Gelbach, 8 Wash. 497, 36 Pac. 467, it was held that under the statutes of Washington governing the presentation and allowance of claims against counties, and the issuance of warrants for the sums allowed, it was contemplated that the transaction between the claimant and the county was to be merged in the warrant and settled by it "just as fully as is a store account between a merchant and his customer, when the latter gives his note for the balance found due upon the former's books." Said the court:

"A warrant, under our statutes, is a promise to pay it, in its order of issue, when money applicable to it comes into the treasury, and its maturity, by analogy to a note, is the time when the treasurer gives notice of his readiness to pay it, and stops the interest. Respondent says that if a warrant is considered as a contract, it is one which becomes due instantly upon presentation and therefore the interest upon it, like that upon a past due note, is only allowed as damages. But there is this difference, a note can be sued upon, judgment taken, execution issued, and property levied upon and sold, and the debt paid, but no action lies either upon a warrant or the original debt."

In the light of these authorities, we see no escape from the conclusion that the defendant in error was entitled to a nonsuit. The judgment is affirmed.