## CLEARWATER COUNTY et al. v. PFEFFER.

(Circuit Court of Appeals, Eighth Circuit. July 31, 1916.)

No. 4636.

1. COUNTIES ☞187—DRAINAGE BONDS—MINNESOTA STATUTE.

Gen. St. Minn. 1913, § 5542 et seq., authorize counties to issue and sell drainage bonds, and provide that the proceeds, together with assessments collected for ditches, shall be placed in a general ditch fund, to be used in the construction of ditches, whether county ditches, or judicial ditches extending into more than one county, and. in payment of the bonds as they mature. It is further provided that, in case there is insufficient money in the fund to meet bonds when they mature, any other available funds in the treasury may be used, and afterward replaced from the ditch fund. *Held*, that such provisions do not authorize a county to set apart the proceeds of bonds sold, and appropriate the same to the construction of a particular ditch, leaving unpaid matured bonds previously issued, but that when drainage bonds mature they are entitled to payment from any money in the general ditch fund, from whatever source derived.

[Ed. Note. –For other cases, see Counties, Cent. Dig. §§ 293–295; Dec. Dig. ☞187.]

2. COUNTIES ☞188—PROCEEDINGS TO ENFORCE JUDGMENT AGAINST—DEFENSES.

In a proceeding to enforce a judgment against a county, obtained on county bonds which are primarily payable from a particular fund, it is not a defense that there are outstanding county warrants, where it is not shown that they are payable out of such fund, or that they are due and payable under the state statutes, or that, if they were, they are entitled to preference in payment over the judgment.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 296–299; Dec. Dig. ☞188.]

3. BANKS AND BANKING ☞134(2)—DEPOSITS—APPLICATION TO DEBTS DUE BANK.

The right of a banker to charge up to a depositor without his order the amount of his note, or other obligation to pay, before it is due, is conditioned on the latter's insolvency.

[Ed. Note.–For other cases, see Banks and Banking, Cent. Dig. § 354; Dec. Dig. ☞134(2).]

4. COUNTIES ☞226—ACTIONS AGAINST—EXECUTION AND ENFORCEMENT OF JUDGMENT.

An execution on a judgment against a county or other public corporation may not be lawfully issued and levied on the funds or property acquired by it in its governmental capacity, unless expressly authorized by statute.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 365; Dec. Dig. ☞226.]

5. COUNTIES ☞226—ACTIONS AGAINST—EXECUTION AND ENFORCEMENT OF JUDGMENT.

Gen. St. Minn. 1913, § 677, provides that, when a judgment is recovered against a county, no execution shall issue unless after a stated time the judgment has not been paid as therein required. This statute was in force June 1, 1872, at the time of the enactment of Rev. St. U. S. § 916 (Comp. St. 1913, § 1540), which provides that "the party recovering a judgment in any common-law cause in any Circuit or District Court shall be entitled to similar remedies upon the same, by execution or otherwise, to. reach the property of the judgment debtor, as are now provided in like causes by the laws of the state in which such court is

held." *Held*, that the issuance of an execution by a District Court at once on the entry of a judgment against a Minnesota county, and its levy upon the funds of the county, were unauthorized and ineffective.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 365; Dec. Dig. ☞226.]

6. MANDAMUS ☞154(2)—PETITION—ENFORCEMENT OF JUDGMENT AGAINST COUNTY.

A mere error in form of procedure in a federal court is not fatal, and a proceeding for the enforcement of a judgment against a county by the issuance and service on the county officers, on petition of the judgment plaintiff, of a citation to show cause, although such proceedings were in aid of an unauthorized levy of an execution, may be treated as a proceeding in mandamus, and such writ may be issued therein, where the petition is sufficient, and only questions of law are in issue.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. ☞154(2).]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action at law by Charles Pfeffer against the County of Clearwater and others. From an order made in proceedings in aid of execution, defendants bring error. Reversed.

William A. McGlennon, of Bagley, Minn. (Charles Loring and G. A. Youngquist, both of Crookston, Minn., on the brief), for plaintiffs in error.

Arthur M. Keith, of Minneapolis, Minn. (Joseph R. Kingman, Norton M. Cross, and Thomas F. Wallace, all of Minneapolis, Minn., on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. This writ of error challenges an order of the court below that the Clearwater County State Bank and the First National Bank of Bagley pay, out of the funds standing in them to the credit of the county treasurer of Clearwater county, amounts sufficient to satisfy an execution issued on the judgment which the plaintiff recovered against the county on May 6, 1915, for $12,522.20 and costs. The order is attacked on four grounds: (1) That there were no funds in the treasury of the county available to pay this judgment; (2) that there were and had been ever since May 5, 1915, unpaid warrants of the county outstanding to the amount of $67,973.89; (3) that there were in the hands of the Clearwater Bank ever since that date unpaid warrants of the county to the amount of $15,000; and (4) that the execution issued on the judgment and the levies under it upon the funds and credits of the county were unauthorized and void.

Were there funds in the treasury of the county available to pay the judgment? The pertinent statute of Minnesota provides that:

"When any judgment is recovered against a county * * * no execution shall issue, except as herein provided; but, unless reversed, the same shall be paid from the funds in the treasury, if there be any available." Gen. Stat. Minn. 1913, § 677.

On the petition of the plaintiff in the judgment, the court below issued to the county of Clearwater, to its county auditor, to its county

treasurer, and to the banks, an order to show cause why they should not pay this judgment out of the funds of the county in their hands. The county auditor and county treasurer answered for themselves and the county by their affidavits to the effect that the judgment was based on county bonds issued to construct a drainage ditch under chapter 258, General Laws of Minnesota 1901, and chapter 315, General Laws of Minnesota 1903, and General Statutes of Minnesota 1913, § 5542 et seq., that there were in the treasurer's hands raised under that law available to pay the judgment $1,716.77, that there were no other funds available to pay the judgment, but that there were also in the treasurer's hands $19,501.63, money of the county raised by the issue and sale of bonds of the county in anticipation of taxes for the construction of judicial ditch No. 1, that this ditch was in course of construction, that when "said ditch is completed and the contractors paid under their contracts the money will be insufficient to pay the warrants drawn against said fund and moneys," and that the officers of the county are forbidden by the statutes to use the moneys in any fund for any other purpose than that to which it is devoted by the statutes creating it.

[1] The first question, therefore, is: Was this $19,501.63 available to pay the plaintiff's judgment, or was it set apart as a special fund to pay contractors for constructing the judicial ditch yet to be made? The bonds upon which this judgment is founded and the bonds issued to raise the $19,501.63 are the direct obligations of the county. Van Pelt v. Bertilrud, 117 Minn. 50, 52, 134 N. W. 226.

"Said county board," reads the statute, "shall have power to negotiate said bonds as they shall deem for the best interest of said county, but for not less than their par value. The proceeds from the sale of all such bonds shall be placed in a general ditch fund which is hereby created. Such county board shall provide moneys for the payment of the principal and interest of said bonds as they severally mature, which moneys shall be placed in the general ditch fund, into which fund it may transfer any surplus moneys remaining in the general revenue fund or other funds of the county which can properly be used for the purpose of this act, into which fund shall also be paid all moneys received from the payment of any liens created under the provisions of this act. And such board is hereby authorized to pay drainage bonds issued under the provisions of this chapter out of any available funds in the county treasury, when the moneys on hand in the general ditch fund of the treasury are insufficient to meet the payment of bonds issued in ditch proceedings when the same mature, but the fund from which such moneys have been taken or used for the payment of bonds as they mature shall be replenished with interest at the rate of six per cent. per annum from collections of unpaid assessments for ditches, drains or water courses constructed under any proceedings had hereunder." General Laws of Minnesota 1903, pp. 557, 558, and amendments; General Statutes of Minnesota 1913, § 5542.

A judicial ditch is one which extends into more than one county. The judge apportions the cost of the ditch between the counties (section 5559), and the power and duty of the county to collect the assessments upon the property in the case of a judicial ditch, to issue bonds to anticipate these collections, to place the proceeds of these bonds and the moneys collected from the assessments (section 5625) in the general ditch fund, and out of that fund to pay any of its drainage bonds that mature, whether issued for county or judicial ditches (section 5542), and any damages for the taking or injuring of land in the con-

struction of any ditch whatever (section 5627), are the same in the case of the construction of a judicial ditch as in the case of the construction of a county ditch. No intention is manifested and no provision is made by the statutes to keep the proceeds of bonds issued or of assessments or liens collected for any particular drainage ditch, whether county or judicial, separate from the proceeds of bonds issued or of assessments collected for other such ditches in the county, or to appropriate the former to the payments of the bonds issued for or the costs of that particular ditch in preference to other obligations of the county to pay liabilities arising from bonds or otherwise out of the construction of ditches.

On the other hand, the statutes create a general ditch fund. They require the county officers to pay into that fund all moneys derived by the county from all bonds issued for the construction of all county and all judical ditches (section 5542), all moneys derived from the collection of assessments or liens made for all such ditches (sections 5542, 5625), all surplus funds remaining in the general revenue fund, or other funds of the county, which can properly be used for drainage purposes (section 5542), and the moneys which the county is commanded to provide for the payment of the principal and interest of all its drainage bonds as they mature (section 5542). They require the county to pay its drainage bonds as they mature and the damages for the taking of and the injury to property in the construction of the ditches out of this general ditch fund, if there is sufficient there so to do, and, if not, out of the general revenue fund of the county (sections 5542, 5627). Therefore they required this county to place this $19,501.63 in the general ditch fund, and it did so.

It is no answer to the claim that this fund thereby became available to pay this judgment on the matured drainage bonds of this county that the county or its officers intended to neglect or refuse to pay its past-due drainage bonds and to use this money to pay future debts it was making for another drainage ditch that was yet to be constructed. This statute required it to apply any funds in its general ditch fund available to the payment of its matured drainage bonds, and the county was without the right to refuse so to do and to apply these moneys to pay future debts not yet accrued. The statutes neither created nor empowered the county to create any lien upon or trust in this $19,-501.63, or in any other moneys in its general ditch fund, for the preferential benefit of those who had contracted to build the contemplated judicial ditch, and there was no such lien or trust. Where neither the statutes nor the bonds issued thereunder limit the funds from which their payment shall be made, all the funds of the municipality or quasi municipality issuing them not specifically appropriated by, or by authority of, law to the payment of other debts or claims of the corporation issuing them, are available to pay them. Vickrey v. City of Sioux City (C. C.) 115 Fed. 437, 440. And our conclusion is that this $19,501.63 was available under the true construction of that term in these statutes to pay, and the statutes imposed the duty upon the county and its officers to pay, out of that fund the judgment of the plaintiff on his past-due drainage bonds.

[2] The answer of the county and its officers by the affidavits of the latter stated that there were and are outstanding and unpaid warrants drawn on the county treasurer aggregating $67,973.89. But this fact is no defense to the claim of the plaintiff to payment of his judgment out of the moneys in the general ditch fund: (1) Because the affidavits neither alleged nor claimed that these warrants are payable out of that fund, and the presumption is that they are not, for the affidavits alleged that there is in the hands of the county treasurer $1,716.77 raised under the drainage statutes above cited, and which, therefore, must be in this general ditch fund which is available to pay the plaintiff's judgment. If this $1,716.77 is available to pay the plaintiff's judgment notwithstanding these unpaid warrants, by the same mark the $19,501.63 must be in like manner available; (2) because it does not appear from the answer of the county and its officers that these warrants have been presented for payment, or that payment has been demanded, or that they are due; and (3) because it does not appear that the owners of such warrants have any legal right to or equitable ground for a priority or preference of payment over the plaintiff, and it is no defense to the claim of one creditor for payment that his solvent debtor owes others.

[3] The answer of the Clearwater County State Bank to the order to show cause was that it had $12,000 to the credit of the treasurer of the county, but that at all the times in question it had and still has in its hands unpaid warrants of the county drawn on the treasurer for the aggregate amount of $15,000, for the payment of which it claims a lien on the fund it holds to the credit of the county. But this claim of a lien is untenable. In the first place, the bank does not allege or prove that it was the owner of any of the warrants, and, if it was not, it could have neither a lien on the credit of the county with it nor a set-off on account of these warrants. The affidavit in response to the order to show cause goes no farther than to state that the bank "has in its hands unpaid warrants of the auditor," etc. Again, the time when a county warrant is due is when the treasurer sets apart a sufficient sum to pay it, and, if it bears interest, gives notice to stop the interest. General Statutes of Minnesota 1913, § 870; Pauly Jail Bldg. & Mfg. Co. v. Jefferson County, 160 Fed. 866, 870, 88 C. C. A. 48, 52. There is no averment or claim that these warrants are due, and no allegation or claim that the county is insolvent. The right of a banker, sometimes loosely styled a lien, to charge up to a depositor, without his order, his note or other obligation to pay before it is due, is conditioned on the latter's insolvency. Irish v. Citizens' Trust Co. (D. C.) 163 Fed. 880, 886; Wunderlich v. Merchants' National Bank, 109 Minn. 468, 471, 472, 124 N. W. 223, 27 L. R. A. (N. S.) 811, 134 Am. St. Rep. 788, 18 Ann. Cas. 212. And there is no allegation in the answer of the bank of the insolvency of the county. The bank, therefore, had no lien on the funds it held to the credit of the county.

[4, 5] The plaintiff's judgment was rendered on May 6, 1915, an execution was issued upon it, and in June and July, 1915, the marshal levied this execution on the funds of the county in the hands of its treasurer and on the credits which the county had in its depositories,

the Clearwater State Bank, where its credit was $12,836.26, and the First National Bank of Bagley, where its credit was $12,847.97. The statutes of Minnesota provide that:

"When any judgment is recovered against a county, * * * no execution shall issue except as herein provided; but, unless reversed, the same shall be paid from funds in the treasury, if there be any available; if not, the amount thereof shall be levied and collected as other county charges, and, when so collected, shall be paid to the person in whose favor the judgment was rendered, upon the delivery of a proper voucher therefor. If payment is not made within thirty days after the time the treasurer is required by law to make settlement with the auditor next after the rendition of such judgment, execution may issue, but the property of the county only shall be liable thereon." Section 677.

The defendants contend that the execution and the levies were unauthorized and void, and the plaintiff cites Canal & Claibourne Street Railroad Co. v. Hart, 114 U. S. 654, 661, 662, 5 Sup. Ct. 1127, 29 L. Ed. 226, and insists that they are valid, and that the provisions of the statute which stay execution until 30 days after opportunity to levy and collect taxes to pay it have expired are inapplicable to this case. In the Canal, etc., Railroad Company's Case, Hart obtained a judgment in the Circuit Court of the United States against the city of New Orleans on March 3, 1882. On March 15, 1882, pursuant to a general statute of the state of Louisiana, Hart caused the issue of a fieri facias in that suit, and under it caused the seizure in the hands of the railroad company of the property, effects, and credits of the city, and thereupon such proceedings were had that judgment against the railroad company, the garnishee, followed a judgment against the city. In the Supreme Court the judgment against the railroad company was assailed on the ground that when the fi. fa. was issued there was no law which authorized its issue against the city of New Orleans. The issue of the fi. fa. against the city was authorized, however, by the general laws of Louisiana on June 1, 1872, when section 6 of chapter 255 (17 Stat. 197) of the act of that date, now section 916 of the Revised Statutes, took effect. That section reads in this way:

"The party recovering a judgment in any common-law cause in any Circuit or District Court shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the state in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such Circuit or District Court; and such courts may, from time to time, by general rules, adopt such state laws as may hereafter be in force in such state in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

The state of Louisiana had by section 2 of a special act passed March 17, 1870 (Laws Ex. Sess. 1870, No. 5), prohibited the issue of any writ of execution or fi. fa. from any of the courts of that state against the city of New Orleans. The Supreme Court held that this special act was not adopted by section 916, but that that section adopted only the general laws of the state, providing remedies for the enforcement of judgments in like causes—that is to say, in causes of the same general class as that specially under consideration. This decision is clearly irrelevant and inapplicable to the case in hand; because the same general provision of the statute of Minnesota which now exists

regarding the issue of executions upon judgments against counties was in effect in that state in 1872, when section 916 was enacted (Statutes of Minnesota 1866, p. 114, § 83; Statutes of Minnesota 1878, p. 135, § 91), and it controlled then, as it controls now, the issue of executions in causes like that here in hand; that is to say, all causes in the general class of which this cause is one.

It is a general rule that an execution on a judgment against a public corporation may not be lawfully issued and levied on the funds or property acquired by it in its governmental capacity unless expressly authorized by statute, because it holds such funds and property in trust for the public uses and purposes for which it obtained them. The execution and the levies in the case in hand were not expressly authorized, but were expressly prohibited by statute, and they were therefore unauthorized and ineffective. 3 Abbott, Municipal Corporations, p. 2575, § 1167; Jordan v. Board of Education, 39 Minn. 298, 39 N. W. 801; State ex rel. v. Foot, 98 Minn. 467, 108 N. W. 932.

[6] A right judgment, however, though rendered for a wrong reason, may be sustained. There were in the general ditch fund in the treasury of this county, and in the hands and control of its auditor and treasurer, ample funds available to pay the plaintiff's judgment, and the statute required them to pay it out of these funds. The power was conferred and the duty was imposed upon the court below to require and command them so to do. It might have done this by means of an alternative writ of mandamus, followed after a hearing by a peremptory writ of mandamus. In view of the fact, however, that no issue of fact arose in the proceedings in hand, and that the issues of law were submitted, heard, and decided without objection on petition and answer, the petition, order to show cause, answer, and final order, so far as the county and its officers are concerned, had every essential attribute of a proceeding in mandamus, and the court below was not without power or duty to require and command them to make the payment in this proceeding. Section 954, U. S. Revised Statutes (section 1591, U. S. Comp. Stat. 1913), provides:

"That no summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect, or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such court shall amend every such defect and want of form, other than those which the party demurring so expresses."

The petition was in all respects sufficient to warrant writs of mandamus. It set forth the judgment, the funds of the county in the possession of the auditor and treasurer sufficient to pay the judgment, prayed an order on them and on the county to show cause why an order should not be made requiring them to do so, and why such orders as the court should deem proper should not be made. The order to show cause was issued and served upon the county and its officers. They appeared and answered by the affidavits of the auditor

and treasurer, and therein admitted that they had $1,716.77 in their control in the county depositories available to pay the judgment, and showed that they had more than $19,000 lawfully available for that purpose, as has been decided, although, while admitting the possession and control of this fund, they denied its availability, and this presented the only question of law on the merits of the case for the decision of the court below. After a full hearing on this petition and answer, the court made an order that the judgment should be paid out of the funds to the credit of the county in the banks. Here were lawful proceedings, ample to sustain, and the legal right in the plaintiff to have, an order on the county to pay this judgment, on the county auditor to issue orders or warrants on the county treasurer to pay it (State ex rel. v. Foot, 98 Minn. 467, 108 N. W. 932), and on the county treasurer to make such payment to the plaintiff or his attorneys. But the final order made by the court is not to that effect. It is that the banks pay to the United States marshal the amount necessary to satisfy the execution on the judgment out of the credits in them to the county, or to the county treasurer, on which he levied.

As the execution and the levies were unauthorized, this order must be reversed, and the cause must be remanded to the court below, with directions to dismiss the banks, and to enter an order on the petition and on the answer of the county and its officers, directing and commanding the county of Clearwater to pay said judgment, directing and commanding the county auditor of said county to issue county warrants or orders in due form on the county treasurer of said county, directing him to pay to the plaintiff, or to his attorneys in this case, out of the funds of the county in his control, amounts sufficient to pay and satisfy said judgment, and to deliver the same to the plaintiff's attorneys, and directing and commanding the county treasurer to obey such warrants or orders, and on presentation thereof by the plaintiff or his attorneys to pay to him or them out of the funds of the county amounts sufficient to satisfy and pay the judgment of the plaintiff; and it is so ordered.