[File No. 6338.]

OSAGE FARMERS NATIONAL BANK, a Corporation, of Osage, Iowa, Respondent, v. VAN HOOK SPECIAL SCHOOL DISTRICT NO. 8, a Quasi-Municipal Corporation of Mountrail County, North Dakota, Appellant.

(263 N. W. 162.)

Opinion filed November 5, 1935.

*F. F. Wyckoff,* for appellant.
*C. N. Cottingham,* for respondent.

CHRISTIANSON, J.   Plaintiff brought this action to recover on seven warrants alleged to have been issued by the defendant school district. The warrants were issued during May and June, 1923.   The defendant, in its answer, admits the issuance of the first six warrants but denies generally the allegations in the complaint regarding the issuance of the seventh warrant.   The answer further alleges that in the month of November, 1923, and for a long period of time thereafter, the defendant had on hand in its general fund a sufficient sum of money to pay in full all outstanding warrants including the warrants described in the complaint herein; that consequently plaintiff's causes of action accrued more than six years prior to the commencement of this action and that said rights and causes of action are barred by the statute of limitations; also, that said warrants have been fully paid prior to the commencement of this action.

The case was tried to the court without a jury upon the issues thus formed and resulted in findings of fact and conclusions of law in favor of the plaintiff.   Judgment was entered accordingly and the defendant has appealed.

The warrants involved in this action were issued to seven different payees.   Six of the warrants were issued for salaries, and the seventh warrant was issued to pay for driving a school bus.   The indorsements on the warrants disclose that they were presented for payment to the treasurer of the school district on the day on which they had been issued or within three days thereafter, and that they were not paid because of lack of funds in the treasury with which to pay them; that they were thereupon duly registered by the treasurer.   Shortly after they had been issued they became the property of the First National Bank of Van Hook and after they had been duly registered they were sold by the First National Bank of Van Hook to the Osage National Bank of Osage, Iowa.

The Osage National Bank continued to hold the warrants until De-

cember 31, 1926, when that bank was consolidated with the Farmers National Bank of Osage, Iowa, and the plaintiff bank was organized to take over the banks so consolidated. The warrants thereupon became the property of the plaintiff bank and it has continued to hold and own the warrants since that time. Beginning in May, 1928, the plaintiff bank made repeated inquiry from the treasurer of the plaintiff school district regarding the warrants and when the same would be, or were likely to be, called for payment. The school district treasurer informed the plaintiff bank as regards the probable time in the future at which the warrants would be so called.

In 1923 the North Dakota Legislative Assembly enacted a law, the object of which (according to the title) among others was to provide "a Method by which Taxing Districts May Make Short Time Borrowings and Conduct their Current Business upon a Cash Basis." This act provided that school districts should have the power to borrow money to meet current expenses in anticipation of revenues to be derived from taxes already levied; but that the aggregate amount of such borrowings should not at any time exceed the amount of uncollected taxes which have been levied during the current year plus uncollected taxes remaining on the tax list of prior years, exclusive of levies for the purpose of retiring bond issues and the interest thereon. It further provided that for the purpose of borrowing funds to meet current expenses such taxing district may issue certificates of indebtedness, which certificates are required to bear the certificate of the county auditor to the effect that they, together with all other outstanding certificates, are within the amount of uncollected taxes which have been lawfully levied in the current year plus uncollected taxes standing upon the tax lists of prior years to the credit of the taxing district. The statute further provided that when any taxing district has issued certificates of indebtedness pursuant to the terms of this act, which certificates remain unpaid after maturity, it shall be the duty of the county auditor upon presentation to him of such past due certificates and upon written request of the holder or holders thereof, to set aside all tax collections except those for sinking and interest funds thereafter accruing to the credit of such district and the same shall be held by the county treasurer in a special fund to be used only for the purpose of retiring such

certificates of indebtedness and paying interest thereon until sufficient funds shall have been accumulated to retire such past due certificates of indebtedness. Section 6 of the Act provides: "It is the intention of this act to place the business of all taxing districts upon a cash basis as nearly as may be and to that end to provide for the funding of warrants outstanding at the time this act takes effect. Any taxing district may issue bonds for the purpose of retiring warrants outstanding July 1, 1923, which bonds may be issued without submitting the matter to the electors."

The defendant school district availed itself of the provisions of this act and issued certificates of indebtedness, and the taxes which were collected thereafter were utilized to pay off such certificates of indebtedness. The trial court found: "That under the provisions of Chapter 326 Session Laws of North Dakota for 1923, defendant school district was placed upon a cash basis as of July first, 1923, and that subsequent to that time and prior to July 1, 1927 said district did not have cash on hand applicable to that purpose with which to pay plaintiff's school warrants. That current income received following July 1st, 1923 was required for current expenses."

(1) The first contention advanced by the appellant is that the several causes of action are barred by the statute of limitations. This contention in turn is predicated upon the proposition that Chapter 326, Laws 1923, did not provide that warrants and certificates of indebtedness issued after July 1, 1923, for current expenses, should have priority over warrants previously issued and registered; and upon the further proposition that if the statute does so provide it was and is unconstitutional as to the holders of such prior warrants.

It is asserted that moneys that were received into the general fund of the defendant school district should have been expended in payment of warrants in the order of their registration; and that the causes of action upon the warrants involved in this action accrued when moneys had been received into the general fund, sufficient to provide for the payment of such warrants in the order of their registration. In support of its contentions appellant cites § 1353, Comp. Laws 1913, which reads:

"Any violation by a district treasurer of the provisions of this chap-

ter (§§ 1105–1422) requiring indorsement of warrants not paid for want of funds, and the payment thereof in the order of presentation and indorsement is a misdemeanor punishable by a fine not exceeding one hundred dollars."

We find it unnecessary to determine the merit of these contentions.

In this state warrants as a device for liquidating the amount legitimately due to the creditors of a school district and as instruments necessary to carry on the machinery of municipal administration (2 Dill. Mun. Corp. § 851) are prescribed by express statutory enactment. All claims against a school district are paid upon warrants, drawn on the school treasurer, and signed by the president and countersigned by the clerk. Comp. Laws 1913, §§ 1168, 1255.

A school warrant does not constitute a new debt or evidence of a new debt, but is only the prescribed means for drawing money from the municipal treasury to pay an existing debt. State ex rel. First Nat. Bank v. Cook, 43 Neb. 318, 61 N. W. 693. At the time the warrants in question here were issued and delivered there was no statutory provision prohibiting the issuance of warrants merely because there was no money in the treasury available for the payment of the warrant when it was drawn. On the contrary, our statutes contemplated that warrants within the limits prescribed by law might be issued in anticipation of revenue.

Section 1169, Comp. Laws 1913, provides: "When a school district warrant is presented to the district treasurer for payment and there is no money in his hands or subject to his order belonging to the proper fund for the payment of such warrants, he shall indorse on such warrant, 'presented for payment this —— day of ————, 19—, and not paid for want of funds,' and shall sign such indorsement and indorse the sum on the warrant and add 'balance the part payment of such warrant, he shall make such part payment and indorse the sum on the warrant and add "balance not paid for want of funds," ' signing the same. He shall keep a correct register of all warrants so presented and indorsed. Each warrant thus presented and indorsed shall draw interest on the amount unpaid at a rate not to exceed seven per cent per annum from the date of such presentation and indorsement until paid; provided, that when there shall come into the hands of the treas-

urer or subject to his order, money applicable to the payment of any warrant which has been so presented and registered, he shall notify in writing by mail, the drawee of such warrant at his last known place of residence, to present such warrant for payment, and interest shall cease upon every warrant ten days after such notice shall have been sent, and such money shall be held for the payment of such warrant."

All the warrants involved in this case were presented to the treasurer of the defendant school district for payment either on the day on which they were issued or within three days thereafter. The warrants were all indorsed by the school district treasurer as provided by law to the effect that they had been duly presented for payment and not paid for want of funds. In these circumstances the Statute of Limitations did not commence to run until the warrants were called for payment and notice given to the holder as required by law. Seward County v. Shepherd, 71 Kan. 61, 80 P. 36; Potter v. New Whatcom, 20 Wash. 589, 56 P. 394, 72 Am. St. Rep. 135; Union Sav. Bank & T. Co. v. Gelbach, 8 Wash. 497, 36 P. 467, 24 L.R.A. 359; Miller v. Haskell County, 66 Kan. 730, 66 P. 1084; Hubbell v. South Hutchinson, 64 Kan. 645, 68 P. 52.

There is no claim that any of the warrants involved in this action were called for payment at any time, or that the holder of these warrants was ever notified to present the warrants for payment. On the contrary, the undisputed evidence is to the effect that when the holder of the warrants made inquiry from the school district treasurer it was notified that there were no funds available for the payment of the warrants.

We are agreed that plaintiff's causes of action are not barred by the statute of limitations.

Appellant next contends that the warrants are invalid because the corporate seal of the school district was not attached; also that one warrant issued to one Logue, for teacher's salary, is void because it was not signed by the president of the school district. In answering this contention respondent asserts: (1) That the alleged irregularities in the issuance of the warrants did not affect their validity; (2) that the defendant school district is estopped from claiming that the war-

rants are invalid; and (3) that the alleged irregularities or defects were cured by § 1421, 1925 Supplement to the Comp. Laws of 1913.

We shall not consider the first two propositions advanced by the respondent as we deem the third one to be controlling. So far as material here, the curative act invoked by the respondent reads as follows:

"Where the officers of any common, special or independent school district of this state shall have incurred indebtedness and issued warrants for the erection, purchase, repair or maintenance of any school building, or for the purchase of equipment for any school building, or any other legitimate corporate purpose, and said warrants are outstanding, in any or all such cases where said warrants are within the five per cent debt limit of the district, the same are hereby legalized and declared to be the valid indebtedness of such school district; and in all cases where an election has heretofore been held in any school district and the electors of such school district have at such election, by a majority vote, determined to increase the indebtedness of such district five per cent on the assessed value of the taxable property in such district, beyond said original five per cent limit, as provided in article 35 of the amendments to the Constitution of the state of North Dakota, in any or all such cases where said warrants are within the said additional five per cent limit so voted, as aforesaid, the same are hereby legalized and declared to be the valid indebtedness of such school district."

The act became effective July 1, 1923,—subsequent to the issuance and registration of the warrants involved in this action. Appellant argues that the statute is not applicable because, it is said, the warrants were not "issued" unless and until they were issued with the formality prescribed by the statute. In our opinion, this argument is not sound. There is no need of curative legislation, where there is nothing to cure. The curative act involved here was enacted by the legislative assembly to cure all curable defects in warrants that had been issued for legitimate corporate purposes, within the legal debt limit of the school district. The only deduction that reasonably can be drawn from the record in this case is that the warrants involved in this action were issued by the clerk of the defendant school district in regular course of business for valid, existing, approved claims against the school district.

When the curative act became effective the warrants were evidence of outstanding legitimate obligations against the school district and so recorded upon the books of the school district. Throughout the years thereafter the warrants have been treated and considered by the officers of the school district as valid claims. Their validity has never been questioned. When the plaintiff bank from time to time made inquiry from the proper officer of the defendant school district it was informed that the warrants would be paid when sufficient funds for that purpose were available. The irregularities in question here were in all probability due to oversight. To permit the school district now to say that it ought to be released from liability for obligations incurred for the salaries of teachers and the transportation of pupils because of the irregularities which it now seeks to invoke would be to place form above substance and in effect permit the defendant school district to take advantage of its own wrong; for there is no reason to doubt that at the time the warrants in suit were issued that it was the duty of the officers of the defendant school district to issue valid warrants to the payees of all the warrants involved in this action. We are agreed that § 1421, supra, applies to and cured the irregularities and defects in question here.

It is next contended that the evidence does not show that the plaintiff is the owner of the warrants. Five of the warrants were indorsed in blank by the payees named therein. Two of them were not indorsed. This, however, is not material. An indorsement was not necessary to transfer title to the warrants. The evidence clearly shows that the warrants came into the possession of the plaintiff in this action from the former holder who paid a valuable consideration for them and that the plaintiff in turn paid a valuable consideration. Transfer of the warrants without indorsement vested in the transferee such title as the transferor had. Comp. Laws 1913, § 6934.

It is also contended that the evidence shows that the warrants were paid on December 29, 1923. This contention is untenable. It is based upon certain entries in the books of the First National Bank of Van Hook showing that the bank received moneys for the warrants. The undisputed evidence, however, shows that the First National Bank of Van Hook sent the warrants to the Osage National Bank in the usual

204

course with a sight draft attached; that that draft was paid, and that in this manner the warrants became part of the assets of the Osage National Bank and that they continued to be such assets until they, with other assets, were turned over to the plaintiff bank. There is not the slightest basis for any claim that the warrants were paid.

We are all agreed that the judgment appealed from is just and correct. It should be, and it is, affirmed.

Burke, Ch. J., and Morris, Nuessle and Burr, JJ., concur.