[No. 3070.  Decided February 24, 1899.]

A. POTTER, *Respondent,* v. CITY OF NEW WHATCOM, *Appellant.*

MUNICIPAL CORPORATIONS—WARRANTS—STATUTE OF LIMITATIONS—CONVERSION BY TREASURER—LIABILITY OF CITY.

The statute of limitations does not begin to run against a city warrant until there is money in the treasury applicable to its payment and until the holder of the warrant had such notice as would enable him to present it to the treasurer for payment.

Where money due upon an assessment for a street improvement fund has been collected by the treasurer of a city, the city is responsible to the warrant holders for the safe custody and payment of the money upon the warrants, and is liable out of its general fund for a conversion of such moneys by its treasurer.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge.  Affirmed.

*Fairchild & Bruce,* for appellant.

*T. E. Cade,* and *S. A. Callvert,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—Action on warrants drawn against a street improvement fund assessment district in the city of New Whatcom. The city of New Whatcom had entered into a contract for improving streets, and, in discharge of the contracts with the contractors, delivered warrants. drawn payable out of street improvement funds for the assessment districts in which the improvement was done. These warrants were assigned to the respondent. The city answered and pleaded (1) the statute of limitation of two years, and (2) that of three years, and set forth that the city treasurer collected large sums of money due to various funds and accounts on various street assessment districts, as well as for other purposes, and that a portion of the

money so collected was represented by the amounts named in the complaint; that the city treasurer did not, however, cover the money, or any part thereof, in the treasury of the city, but converted the same to his own use, and that none of the money ever came into the hands of the appellant; that such facts became known to the city about the 1st day of September, 1893, and the respondent was informed of it as early as the 1st of January, 1894, and had full knowledge of the conversions and defalcations of the city treasurer, and was apprised that the money had been wrongfully and unlawfully converted by the treasurer; and further set out that the city took steps to collect on the bond of the treasurer the money referred to in the complaint, together with other moneys then due, and that an adjustment was made by which property was turned over, exhausting the treasurer and bondsmen to the extent of their liability, and that appellant has set apart such property for a special fund, and proposes to pay it out *pro rata* to the various funds with which the treasurer was chargeable, and that none of the property has so far been converted into money; and all of these facts were known to the respondent more than three years before the commencement of the suit. The respondent demurred to the answer on the ground that it did not state facts sufficient to constitute a defense, which demurrer was sustained; and appellant, declining to plead further, brings the cause here, and assigns as error the judgment sustaining the demurrer to the answer.

Without reviewing specifically the various errors assigned upon the order sustaining the demurrer to the defenses, it may be declared that the action is upon a written contract, the nature of which was very well defined in *Union Savings Bank & Trust Co. v. Gelbach,* 8 Wash. 497 (36 Pac. 467):

" Now a warrant, under our statutes, is a promise to pay it, in its order of issue, when money applicable to it comes into the treasury; and its maturity, by analogy with a note, is the time when the treasurer gives notice of his readiness to pay it, and stops the interest."

In the case at bar, manifestly the statute of limitations could not begin to run until there was money in the treasury applicable to the payment of the warrants, and the holder of the warrants had such notice as would enable him to present them to the treasurer for payment. But the answer further disclosed that the money was collected by the city treasurer, but afterwards converted to his own use, and that the city then made a composition with the treasurer and his sureties, by which it accepted property in lieu of the money which the treasurer had wrongfully converted to his own use. The city, as a trustee for the warrant holder, could not make such composition, and then avoid the payment of the warrants. It could take nothing but money, consistent with its trust. It cannot require the warrant holder to wait until it may convert property into money. Its duty was to collect the money in the treasury. This seems to have been done in the first instance, for there is no doubt but the authorized collection of the assessment by the city treasurer was the act of the city; and when the money was collected, as between the city and a warrant holder, the city was responsible for its custody and payment upon the warrants. The city charter, under which these assessments were made, provided: "The money collected upon assessments for the improvement of streets and alleys shall be kept as a separate fund, and in no wise used for any other purpose whatever." Charter of Whatcom (Laws 1883, p. 153, § 15).

Certainly, the city did not regard the collection of these assessments as made by the city treasurer as an individual only, because it afterwards held him and his sureties re-

sponsible for this money, and took property from them to the extent of their liability, in satisfaction of the defaults and conversions of the city treasurer. If no assessment had been made under the contracts for the local improvements, and no money collected, the action would not lie; but, as the money has been collected and misapplied by the city, it can be recovered by the warrant holder.

"Municipal corporations, like individuals, are liable for neglect or omissions resulting in injury or damages." Dillon, Municipal Corporations, 968.

The judgment of the superior court is affirmed.

GORDON, C. J., and DUNBAR and ANDERS, JJ., concur.