NUECES COUNTY DRAINAGE DIST. NO. 2 et al. v. GARRETT, County Treasurer. (No. 6018.)

(Court of Civil Appeals of Texas. San Antonio. April 17, 1918.)

MANDAMUS ⊙═106 — COUNTY TREASURER — MINGLING FUNDS—SHORTAGE OF PREDECESSOR.

Where a county treasurer has defaulted, and it is impossible to ascertain from which funds the money was taken, his successor cannot be compelled by mandamus to pay the full amount of funds due to a drainage district, and it is immaterial that he may have wrongfully paid money out of other funds; and Rev. St. 1911, art. 700, prohibiting the diverting of interest and sinking funds, and article 2608, requiring a special bond for drainage funds, have no application.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Proceedings in mandamus by Nueces County Drainage District No. 2 and others against H. N. Garrett, County Treasurer. From a judgment denying the writ, applicants appeal. Affirmed.

R. B. Russell, of Corpus Christi, for appellants. E. H. Crenshaw, Jr., of Kingsville, and J. M. Taylor, of Corpus Christi, for appellee.

FLY, C. J. Nueces county drainage district No. 2, the First State Bank of Robstown, and C. C. Brendle, George H. Peters and L. T. Messer, drainage commissioners for said district No. 2, applied for a writ of mandamus directed against appellee, the treasurer of Nueces county, to compel him to pay over to the drainage district and its designated depository, the First State Bank of Robstown, Tex., the sum of $11,466.48, which it was alleged belonged to said drainage district and had been deposited with the treasurer for safe-keeping, and which the treasurer refused to pay to the said district, and which it needed and required to pay off certain bonds that were about to mature. Appellee answered that, if the money was ever collected and paid to the treasurer of Nueces county, it was paid to his predecessor in office, H. C. Gussett, and that it was blended and mingled with other funds and other sums of money belonging to the county; that after appellee qualified as treasurer the said Gussett delivered to him the sum of $55,433.15; that said Gussett did not designate any part of the money as belonging to appellants, and did not give any information by which it could be ascertained what part should be credited to the drainage district; that said Gussett should have delivered to appellee the sum of $82,208.84, and consequently there was a deficit of $26,775.69, and it was impossible to determine in what fund or funds such deficit exists; and that the payment by appellee to appellants of the sum demanded by them would inevitably deplete pro tanto the other public funds that belong to Nueces county. The writ of mandamus was denied.

The evidence sustained the allegations in appellee's answer. The evidence indicated a shortage in the funds delivered to appellee by his predecessor of more than $26,000; of a mingling and blending of all the funds in the hands of the treasurer, making it impossible to determine out of what particular fund the defalcation was taken. This court

⊙═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

adopts the conclusions of fact of the trial court.

Appellee was in no position to determine what part of the funds in his hands belonged to the drainage district, or what pro rata of the money turned over to him should be allotted to each particular fund. There was nothing so sacred or peculiar about the drainage money that it could not be appropriated by an officer who had it in charge. It was mingled with other moneys belonging to the county, and appellee would at his peril pay out of the depleted sum delivered to him the full amount of the money belonging to the drainage district. The fact that he may have paid checks on other funds would not form the basis for a writ of mandamus to pay the one in controversy. It may be that he assumed an authority in those instances which he had no legal right to assume. He cannot be compelled to assume such power in this instance.

Article 700, Revised Statutes, does not sustain the contention that the treasurer should be compelled by mandamus to pay the entire amount of the money belonging to appellants out of the depleted county funds. It merely provides that no city or county treasurer shall honor any draft upon the interest or sinking fund provided for any of the bonds of such city or county, nor pay out or divert the same from the purposes for which it was collected. It does not intimate that, if it should be stolen or embezzled, the treasurer should replace it out of other county funds.

Article 2608, Revised Statutes, which is cited by appellants, merely provides that the county treasurer shall be the drainage district treasurer, and shall give a certain character of bond. It does not point to the conclusion that a successor to a defaulting treasurer can be compelled to pay out of mingled funds of the county the amount of the drainage fund, but rather indicates a suit on a bond to obtain the money. There are authorities holding a contrary doctrine to that contended for by appellants.

In the case of City of Austin v. Cahill, 88 S. W. 536, the funds had been commingled and a writ of mandamus was sought to compel the payment of a certain fund. The court held:

"In the present case it clearly appearing from the record that other parties not before the court are interested in the funds sought to be appropriated to the payment of appellee's judgments, and that they will be materially affected by the issuance of the writ, and it also appearing that appellee is seeking to require the appropriation of funds collected and held by the city as an interest and sinking fund, it appearing that no separate accounts were kept for interest and sinking funds, but that the same were blended, and that it would be impossible to determine from the record how much of said fund belonged to one and how much to the other, we conclude that this case falls clearly within the rule announced by Judge Stayton, and that the writ should not be granted, and that there was error in the judgment of the court overruling appellants' exceptions to said petition."

The opinion referred to is in the case of Railway v. Jarvis, 80 Tex. 457, 15 S. W. 1089.

The writ of mandamus does not lie when anything remains to be done or fact to be ascertained. Thus in the case of Clayton v. McWilliams, 49 Miss. 311, cited by Merrill on Mandamus, § 42, a writ of mandamus was applied for to compel the county treasurer to pay a warrant of the board of police; it appearing that it was to be in Confederate money. The court held that the difference in value in that money and legal money could not be ascertained, and the writ should not issue. In this case it was impossible for appellee to know which funds had been left in the depleted treasury, and he could not be compelled to pay out one fund to the detriment of another, and probably thereby subject himself to a suit by those interested in other funds. Appellants doubtless will be able to collect their money, but not by mandamus.

The judgment is affirmed.

---

⚖➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes