STATE EX REL. CITY OF CUT BANK, APPELLANT, *v.* Mc-NAMER, COUNTY TREASURER, RESPONDENT.

(No. 4,958.)

(Submitted February 3, 1922. Decided March 6, 1922.)

[205 Pac. 951.]

*County Treasurers—Collection of City Taxes—Payment to City Treasurers—Mandamus.*

County Treasurer—Collection of City Taxes—Duty of Treasurer to Pay Them Over—Time.
1. Under section 3356, Revised Codes of 1907 (sec. 5214, Rev. Codes 1921), the county treasurer must collect taxes for a city or town which has not by ordinance placed the duty of collection upon its own treasurer, no provision, however, being made as to when the money so collected must be turned over to the city or town treasurer. *Held,* that the county treasurer must within a reasonable time after collection compute the amount due the city or town and pay it over to the proper custodian, and that the lapse of one month after collection of the bulk of the city or town taxes is not a reasonable time within which to perform that duty.

Same—Prorating City Funds Among County Depositaries Illegal.
2. The county treasurer who collects taxes for a city and which constitute city and not county funds, is without authority to prorate

such funds among banks designated by the board of county commissioners as depositaries for county moneys.

*Same—Mandamus*—Payment of City Funds to City Treasurer—What Defense not Available.

3. In contemplation of law, taxes collected by a county treasurer for a city and not paid over to the city treasurer within a reasonable time after collection, but by him arbitrarily and without sanction of law placed in a bank designated as a county depositary which subsequently closed its doors, were still in the county treasury when suit in *mandamus* was brought to compel payment to the city, and therefore the defense that, the funds being in the defunct bank, he was unable to pay them over was not available to him.

*Same — Payment of City Funds to City Treasurer — Mandamus* Proper Remedy.

4. *Mandamus* is the proper remedy to compel a county treasurer to pay over to a city funds collected by him for it and of which the city treasurer is the proper custodian, and the fact that the county treasurer may be sued upon his official bond is not any bar to such relief.

*Appeal from District Court, Glacier County; John J. Greene, Judge.*

MANDAMUS by the State, on the relation of the City of Cut Bank, against Bruce R. McNamer, Treasurer of Glacier County. Peremptory writ denied, and plaintiff appeals. Reversed and remanded, with directions.

*Messrs. Pray & Callaway,* for Appellant, submitted a brief; *Mr. Lew L. Callaway* argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. L. A. Foot,* Assistant Attorney General, and *Mr. Wiley J. Shannon,* County Attorney of Glacier County, submitted a brief; *Mr. Foot* argued the cause orally.

The relator cannot, by a proceeding in *mandamus,* recover the balance of the taxes due it out of the aliquot part of the other political subdivisions of the state, none of which have been made parties to this proceeding. This money is not his individual money to be used by him as he desires, but trust funds in his hands, title to which rests in others who have not been brought into this proceeding. Under such circumstances it is contended by the respondent that a writ will not issue where it will injuriously affect the rights of other *cestui*

*que trustent* who are not parties to the action. (*State* v. *Stewart,* 50 Mont. 405, 147 Pac. 276; *Wright* v. *Commissioners of Gallatin County,* 6 Mont. 29, 9 Pac. 543; *Stethem* v. *Skinner,* 11 Idaho, 374, 82 Pac. 451; *State* v. *State Board,* 7 Wyo. 478, 53 Pac. 292; *Farmers' etc. Reservoir Co.* v. *People,* 8 Colo. App. 246, 45 Pac. 543; *Farmers' Independent Ditch Co.* v. *Maxwell,* 4 Colo. App. 477, 36 Pac. 556.) Moreover, the writ will not lie to compel the respondent to do an act which he cannot lawfully do, namely, dissipate the aliquot part of a fund yet in his hands and belonging to other political subdivisions of the state. (26 Cyc. 150.)

A peremptory writ will not issue to compel the payment of a claim from a fund properly applicable to the indebtedness where the fund is no longer in the hands of respondent, even in cases where the fund has been wrongfully dissipated or diverted. (*Bates* v. *Porter,* 74 Cal. 224, 15 Pac. 732; *Duval County Commrs.* v. *Jacksonville,* 36 Fla. 196, 29 L. R. A. 416, 18 South. 339; *State ex rel. Wiles* v. *Spinnel,* 166 Ind. 282, 286, 76 N. E. 971.)

MR. COMMISSIONER HORSKY prepared the opinion for the court.

This proceeding was commenced in the district court of Glacier county by the plaintiff to procure a writ of mandate to compel the defendant to pay over to the plaintiff forthwith the sum of $9,599.85, city taxes collected by him for the city of Cut Bank in said county, in his capacity as county treasurer.

The city of Cut Bank has never provided by ordinance for the collection of taxes levied by such city by its city treasurer, and it therefore became the duty of the county treasurer of Glacier county to collect them. During the year 1920 the defendant, Bruce R. McNamer, as treasurer of Glacier county, collected for and on behalf of the city of Cut Bank, a city of the third class, the sum of $24,405.20, being the taxes levied and assessed by the city for the years 1919 and 1920. Of this

amount the defendant accounted to the city for the sum of $14,805.35, leaving a balance of $9,599.85 still in the county treasury belonging to the city. These taxes were collected by the defendant, or at least a major portion thereof, at the time that the state and county taxes were collected, and were deposited, together with other moneys received as taxes, in the name of Bruce R. McNamer as county treasurer, in certain depositories designated by the board of county commissioners. There had been qualified under the County Depository Act four banks, and the county treasurer deposited all moneys collected by him in these banks.

On December 23, 1920, and before defendant had accounted to said city for the balance belonging to it, to-wit, $9.599.85, the First National Bank of Cut Bank, one of the depositories that had qualified under the law to receive deposits from the county treasurer, suspended operations and became insolvent, and on or about the first day of February, 1921, said bank passed into the hands of a receiver appointed by the comptroller of the currency. The defendant, on December 31, 1920, had on deposit in said bank as county treasurer the sum of $78,332.78 representing forty-seven per cent of all moneys in his possession on that date and belonging to the various county, state and agency funds which he, as county treasurer, is required to handle. Defendant testified that he did nothing toward keeping these funds separate in the bank or banks, and the moneys belonging to the city of Cut Bank were deposited in said banks as he received them, and intermingled with moneys belonging to the county. The moneys in the defunct bank being unavailable, defendant charged off as a loss forty-seven per cent of the total amount of each fund, as shown by his books to have been in his possession as county treasurer on December 31, 1920. By this method he determined that there was approximately $9,599.85 in the First National Bank on said last-mentioned date belonging to the city of Cut Bank. These various amounts so charged off as a loss have been carried upon his books as an "escrow fund." There was a

deposit in the other banks in amount sufficient to pay the city of Cut Bank the balance due it, without interfering with money realized from a certain road bond issue testified to by the defendant.

On the seventeenth day of March, demand having previously been made upon the defendant that he pay to the city of Cut Bank the balance due it, the city instituted the present proceeding to compel him to deliver and pay over to the proper officials of the city the balance still due on account of taxes so collected. On April 21, 1921, being the return day of the writ, the defendant filed a return and answer thereto, in which he set forth the depositing of said moneys with the First National Bank of Cut Bank, the insolvency of said bank, and alleged that by reason thereof there were no funds in his hands available for the payment of the amount as directed by the writ of mandate. To this return the plaintiff interposed a demurrer which was by the court overruled. The plaintiff served and filed its reply to said return and answer, and alleged, among other things, that the moneys due the city of Cut Bank had been intermingled with the moneys of Glacier county, and that the same can be drawn out by said county treasurer and paid to the city of Cut Bank.

Upon the issues thus framed, a hearing was had before the lower court; and thereafter the court rendered and caused to be entered its judgment and order therein, in which it found that the cause shown by the defendant was and is good and sufficient, and that the plaintiff is not entitled to a peremptory writ of mandate, and decreed that such writ be refused, and the action dismissed. This appeal is taken from the judgment of the lower court.

It is earnestly insisted that the court erred in denying plaintiff's petition for a peremptory writ of mandate, and rendering and entering judgment for the defendant.

The city of Cut Bank not having made provision by ordi- [1, 2] nance for the collection of its city taxes by its own treasurer, it became under the law (sec. 3356, Rev. Codes 1907)

the duty of the county treasurer to collect the taxes levied by said city, and, having collected such taxes, it was also his duty to turn them over to the city treasurer of the city of Cut Bank. In the case of *Town of White Sulpher Springs* v. *Pierce,* 21 Mont. 130, 53 Pac. 103, this court, in speaking of a statute then in force requiring the county treasurer to collect city taxes, said: ''The county treasurer collects the taxes in all towns and cities except cities of the first class, unless such towns or cities not of the first class otherwise provide by ordinance. (Section 4870, Political Code.) The plaintiff town had not otherwise provided by ordinance for the collection of its taxes. The defendant, as county treasurer, collected the taxes levied as shown above. Having collected them, section 4864 of the Political Code requires that he pay them over to the town or its treasurer. This he refused to do. We are shown no sufficient reason why he should refuse to comply with a plain requirement of the law. The taxes were levied by the town, and collected by the appellant as town taxes.''

Defendant does not take issue with the statement that it was his duty as county treasurer to collect the city taxes, but asserts that the claim that it was his duty to turn them over to the city treasurer must be accepted with some qualifications. He urges that under section 3003 of the Revised Codes of 1907, as amended by Chapter 88 of the Session Laws of 1913, it became his duty as county treasurer to deposit ''all public moneys in his possession and under his control'' in certain depositories designated by the board of county commissioners, which he did, and that, having done so, he is not liable for the loss of such moneys not due to his neglect, fraud or dishonorable conduct, and further that the taxes were received by him as a mixed fund in which state, county, city and school districts have an interest, but to no part of which either the state, county, city or school district can claim title until he as treasurer, in the discharge of his duty, has had time within which to segregate and appropriate from this general fund the particular portion to which each political subdivision is entitled.

Section 3003 as amended by Chapter 88 of the Session Laws of 1913, reads in part as follows: "It shall be the duty of the county treasurer to deposit all public moneys in his possession and under his control, excepting such as may be required for current business, in any solvent bank or banks located in his county subject to national supervision or state examination, as the board of county commissioners·shall designate and no other, and the sums so deposited shall bear interest at the rate of two and one-half (2½) per centum per annum payable quarterly-annually. The treasurer shall take from such banks such security in public bonds or other securities, or indemnity bonds, as the board of county commissioners of such county may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand.   *   *   *   "

Now, conceding that it is the duty of the county treasurer under the statute just quoted to deposit all moneys collected by him for the city, it goes without saying that he has not then discharged his full duty toward the city. There remains the further duty to account to the city for the moneys so collected. It is further perfectly apparent from a reading of statutes that the city treasurer, and not the county treasurer, is the proper custodian of the city's moneys. (Chap. 88, Laws 1913.) Section 3257, as amended by Chapter 88 of the Session Laws of 1913, imposes upon the city treasurer substantially the same duties with reference to the handling of public moneys coming into· his hands as is imposed upon the county treasurer. He is obliged "to receive all moneys that come to the city or town, either from taxation or otherwise" and "to deposit all public moneys in his possession and under his control" in substantially the same manner as is required of county treasurers, and the sums so deposited shall bear interest at the rate of two and one-half per cent per annum, payable "quarterly-annually." (Chap. 88, Laws 1913.)

Not being the custodian of the city's funds, but simply acting as a collector of city taxes, it is plain that, as soon as

he collects such taxes it at once becomes incumbent upon the
county treasurer to turn them over to the proper custodian,
namely, the city treasurer. True, the county treasurer must,
as he collects taxes, credit the various funds of which he is
the custodian with the amount to which each is entitled, but as
to moneys belonging to the city, this duty does not devolve
upon him, but upon the city treasurer. (Chap. 88, Laws 1913.)
As to moneys collected by the county treasurer for the city,
it is a mere matter of computation to determine the amount
collected, and, when this has been ascertained, it becomes his
duty immediately to pay the same over to the city treasurer.
No reason has been assigned, nor do we believe there is any,
why the county treasurer should retain possession of such
moneys longer than is necessary in the ordinary course of busi-
ness to determine the amount collected. If he deposits the
city's money in the designated depository or depositories, and
before he has had time to ascertain the amount that he
has collected for the city a loss occurs, such as in this case,
he would no doubt be protected, but, after the necessary time
for making such computation elapses, to say that he would be
relieved of the duty of paying over to the city such moneys
so collected would in a sense be allowing him to take advantage
of his own wrongful conduct. He makes the deposit of the
city's money for one purpose and one purpose alone, namely,
for safekeeping until he can ascertain the amount he has col-
lected, and, when this is done, he must immediately account
therefor to the city.

While the statute (sec. 3356, Rev. Codes 1907) makes pro-
vision for the collection of city taxes by the county treasurer,
where the city has not provided by ordinance for the collec-
tion of the same by its city treasurer, there is no specific pro-
vision as to when the money so collected shall be turned over
to the city or its city treasurer. It is unfortunate that this
matter should have been overlooked by the legislature, but a
careful reading of all of the provisions of the statutes dealing
with the subject under consideration, leads us irresistibly to

the conclusion that it was the intention of the legislature to
require the county treasurer to account for city taxes collected
by him as heretofore indicated.

In the case at bar it is undisputed that on December 31,
1920, when the First National Bank of Cut Bank closed its
doors, being one month after the great mass of the city taxes
had been collected, the defendant had neglected to pay over to
the city treasurer the moneys which he had collected for the
city. Under such circumstances we unhesitatingly declare that
an unreasonable time had elapsed for the performance of a
plain duty, namely, the computation of the amount of city
taxes collected and accounting therefor to the city, and that, in
contemplation of law, this money was at the time of the de-
mand by the plaintiff therefor, and the issuance of the alterna-
tive writ, in the county treasury, and should have been turned
over to the city treasurer of the city of Cut Bank.

It will be noted in this connection that Chapter 88, *supra,*
not only provides that the city treasurer must receive all
moneys that come to the city from taxation, and deposit the
same in certain designated depositories, but also provides that
the city shall receive interest on all sums so deposited by such
treasurer in banks which have qualified under the Act to receive
such deposits. From this it is apparent that the legislature
intended that the city, and not the county, should receive all
interest on the city's moneys. To say that the county treas-
urer, after having collected the city taxes and deposited the
same in designated depositories, could be considered to have
performed his full duty, and not obliged to account therefor
until demand made upon him by the proper city officials, would
in our opinion be running counter to, and would in a measure
defeat the purpose of, the above provisions of our statutes. In
other words, under this Act it is evident that the legislature
intended that both the county and city should profit by the
deposits made in the designated depositories, and to say that
the county should be permitted to retain and reap a profit
from the money in the county treasury belonging to the city

would manifestly be inconsistent with this legislative purpose and intent. The provision of Chapter 88, *supra,* with reference to cities is likewise persuasive of the legislative intent to require the county treasurer to account immediately, upon the amount being ascertained, for all moneys collected by him for the city. To accept any other construction of the law would in our opinion establish a dangerous precedent. Cities might be seriously embarrassed in getting possession of funds to which they are justly entitled and might in certain instances be the victims of designing public officials. That the law never contemplated nor expected any such results is perfectly apparent to us.

But, says the defendant, the county treasurer has no available funds out of which to pay the amount due the city of Cut Bank. This argument is likewise based on a false premise. He argues thus: That of all moneys collected by him on December 31, 1920, forty-seven per cent thereof was on deposit in the defunct First National Bank of Cut Bank. He testified that two courses were open to him: One was to pay out the money he had on deposit in other banks, as fast as it was called for, and keep on paying until there was no money left, disregarding the fact that about forty-seven per cent of the money was unavailable, that is, tied up in the First National Bank; and, second, to consider that forty-seven per cent of the city's money, as well as forty-seven per cent of the money belonging to the various other funds, was on deposit in the defunct First National Bank. He chose the latter course. He deducted from each fund of which he was custodian, as well as from the amount collected for the city, this forty-seven per cent representing the amount on deposit in said defunct bank. He does not call to our attention any law or rule which would authorize him so to do. It is perfectly apparent that he arbitrarily selected this method and distributed all moneys available *pro rata* to the various funds, and assumed that forty-seven per cent of all moneys he had collected were on deposit in the First National Bank. To our minds he had a perfect

right to make such distribution as to funds of which he was the custodian, but he had no right whatever to arbitrarily deduct forty-seven per cent from the amount collected for the city on the wholly unfounded assumption that it was on deposit in this defunct bank. His arbitrary action in throwing a *pro rata* share of the loss of the moneys deposited in the First National Bank of Cut Bank upon the city is predicated solely upon the mistaken premise that he was the proper custodian of the city's money. If the loss occasioned by the failure of this bank be prorated properly, and not improperly, as has been done in the instant case, then there will be no lack of available funds to pay the city. There was further no provision in the law nor was the county treasurer authorized to prorate the money which he had collected for the city among the four banks in that county. This duty as to the city's money devolved upon the city treasurer. (Chap. 88, Laws 1913.)

The above also disposes of the point made by defendant that [3] *mandamus* will not lie in the case at bar for the reason that the county treasurer, if required to pay the sum due the city, would have to take the money that was already appropriated to other funds.

While we are fully aware of the rule that *mandamus* will not lie to compel the doing of something unauthorized by law or impossible of performance, yet in the instant case such a rule is inapplicable. In contemplation of law the city's money is still in the county treasury, and the fact that the money has been diverted by the arbitrary act of the county treasurer into some other fund or funds does not excuse the treasurer from the duty of paying the same over to the city.

In *People ex rel. Martin* v. *Brown,* 55 N. Y. 180, *mandamus* was held to be the proper remedy to compel a tax collector to pay taxes collected to make payments on bonds issued in aid of a railroad to the railroad commissioners of the town, although the collector had already paid the funds to the wrong officer. In that case the court said: "The payment to the supervisor of the town was unauthorized; and it is not a

ground for refusing to issue the writ that the defendant has, by his voluntary and wrongful act, subjected himself to loss, or that the performance of the duty enjoined upon him may, in consequence thereof, be difficult or inconvenient.''

Again, in *People* v. *Comptroller*, 77 N. Y. 45, it was said: ''It is a general rule that the writ of *mandamus* will not be awarded when it appears that there are no funds out of which the warrant can be paid if drawn. (High on Remedies, sec. 352.) But when money has been appropriated for a specific purpose it is not in all cases a sufficient answer to an application for a *mandamus* to compel its payment for that purpose to set up that the money has been wrongfully applied to other purposes. It may be regarded in contemplation of law, as still in the treasury. (*People* v. *Stout*, 23 Barb. 338; *Hohl* v. *Town of Westford*, 33 Wis. 324; *Campbell* v. *Polk*, 3 Iowa, 467; *Lansing* v. *Van Gorder*, 24 Mich. 456; *Risley* v. *Smith*, 64 N. Y. 570.)''

The same principle was announced by the court in the case of *People ex rel. Rohr* v. *Owens*, 110 App. Div. 30, 96 N. Y. Supp. 1034: '' 'The money which was raised for the purpose of paying said draft was diverted from its proper purpose to the payment of other drafts.' And no part of the money came into the official hands of the present treasurer. His contention is that under such circumstances this proceeding [*mandamus*] will not lie. As the money was raised and appropriated for a specific purpose, I think that the eye of the law still regards it as in the treasury, and applicable to the discharge of the draft, and that this case must be decided upon the authority of *People ex rel. Dannat* v. *Comptroller*, 77 N. Y. 45.''

That *mandamus* is the appropriate remedy in a case of this [4] kind seems well settled. ''*Mandamus* is the appropriate remedy to compel a county treasurer to pay over to a town treasurer funds belonging to the town, to the custody of which its treasurer is entitled.'' (High's Rem., 3d ed., sec. 367; 2 Spelling on Inj. & Extr. Rem., 2d ed., sec. 1512; Merrill

on Mandamus, sec. 134; 26 Cyc. 311, 334, 335; *State* v. *Hoefinger,* 31 Wis. 257; *State* v. *Roderick,* 23 Neb. 505, 37 N. W. 77.)   Nor is the fact that a defendant is liable to an action upon his official bond any bar to relief by *mandamus.* (High's Rem., 3d ed., sec. 367.)

For the foregoing reasons we recommend that the judgment be reversed and the cause remanded to the district court, with directions to grant the peremptory writ of *mandamus* as prayed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is reversed and the cause is remanded to the district court, with directions to grant the peremptory writ of *mandamus.*

*Reversed.*