BLACKFORD, Respondent, v. CITY OF LIBBY, Appellant.

(No. 7,593.)

(Submitted October 24, 1936. Decided November 6, 1936.)

[62 Pac. (2d) 216.]

*Messrs. Walchli & Korn,* for Appellant, submitted a brief; *Mr. Hans Walchli* argued the cause orally.

274

*Messrs. Blackford & Blackford* and *Mr. E. M. Child,* for Respondent, submitted a brief; *Mr. James M. Blackford* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action begun in the district court of Lincoln county against the city of Libby, and prosecuted to recover the sum of $582.10 expended in paying for the second time city special improvement district warrant No. 39. This second payment so depleted the district funds that insufficient money remained with which to pay warrant No. 33, drawn for the sum of $500 and held and owned by plaintiff Blackford.

On August 30, 1922, defendant city of Libby created improvement district No. 15 for the purpose of constructing a sewer. The work was performed and warrants, in the form prescribed by law, were issued on October 1, 1922, in full payment of the contract price and expenses incurred. The warrants were payable only out of the improvement district fund; the general credit of the city was not pledged. Among the warrants so issued were one numbered 39, and others numbered 32 and 37, inclusive, each for $500. The last-mentioned warrants were registered in the order of their numbers, but they were preceded in time of registration by warrant No. 39. Ever

since November 9, 1922, plaintiff has been the holder and owner of warrants Nos. 33 and 35. The interest on the warrants was payable annually, but the warrants themselves were payable in the order of their registration and at such times as there should be funds in the city treasury for that purpose; when the city treasury held sufficient money for their payment, the warrants were callable by the city treasurer.

Against the district property was made a levy sufficient for an amount with which to pay all warrants and interest in full. If all taxes had been paid as levied and as they became due, the fund would have been completed by December, 1930; many delinquencies, however, occurred. Warrant No. 39, paid in full by the city treasurer on December 31, 1923, was paid again by his successor in office on December 30, 1925, in the sum of $500 principal and $30 interest. Because of the erroneous payment of warrant No. 39 a second time, the fund in 1930 contained only sufficient money with which to pay warrants registered up to and including warrant No. 32. Warrant No. 33 would have been next in order of payment. If warrant No. 39 had not been paid a second time, sufficient funds would have remained on hand in 1930 with which to pay warrant No. 33 in full. Down to December 31, 1932, interest was paid yearly on all outstanding warrants; the last interest payment was made on August 29, 1934. At no time in the future will there be a sufficient amount in the special improvement fund with which to pay warrant No. 33.

Plaintiff filed his original complaint on May 24, 1932, and his second amended complaint, upon which the cause was tried, on March 20, 1934. He set out the facts recited above, and defendant admitted them all. Plaintiff alleged that he had no knowledge or information of the second payment of warrant No. 39 until February 10, 1932; defendant denied this. In addition defendant pleaded as a bar to the action the statute of limitations. Plaintiff interposed a demurrer to this defense, and the court sustained it. Defendant refused to plead further and stood upon its answer.

The cause was tried to the court without a jury. Plaintiff adduced evidence in support of his allegations; defendant offered no evidence, because the demurrer had already been sustained to its special defense—the statute of limitations. The court took the matter under advisement and later found in favor of plaintiff. Judgment was entered in his favor for the sum of $582, plus interest and costs of suit. From that judgment defendant has appealed.

The appeal presents only two questions: (1) Is the evidence sufficient to sustain the judgment against the defendant? And (2) did the court err in sustaining the demurrer to the defense of the statute of limitations pleaded by defendant?

Defendant contends that "the city cannot be held liable for three reasons: 1. In making the payment of the second warrant, the city treasurer was acting as agent for the warrant holders, and not for the city and the payment was from a special fund, and not the funds of the city. 2. The duties of the city treasurer in that regard are defined by statute and the council has no control over him. 3. In making the payment, the treasurer was performing a governmental function."

In support of its contention that the city treasurer in paying the warrants was acting as agent of the warrant holders, defendant cites and relies upon the case of *Gagnon* v. *City of Butte,* 75 Mont. 279, 243 Pac. 1085, 1088, 51 A. L. R. 973; that case, however, does not sustain the proposition for which defendant contends. It holds merely that the city was not liable for failure of its treasurer to make collections from delinquent property owners in improvement districts. The same is true of the annotations in 38 A. L. R. 1271 and 51 A. L. R. 973, cited by defendant. At the beginning of the annotation in 38 A. L. R. 1271, it is said: "The annotation also excludes questions arising from alleged misappropriation, diversion, or withholding of funds collected by or paid to it on account of the improvement." The proposition so excluded embraces the very thing involved here.

Also, in the case of *Broad* v. *City of Moscow,* 15 Idaho, 606, 99 Pac. 101, and other cases cited by defendant, liability was sought to be imposed upon the city because of the failure of its officers to take steps necessary to collect the tax. In the case at bar no question arises about enforcing collection of the tax; on the contrary, the question concerns the misappropriation of funds collected in pursuance of the tax levies. The case of *Gagnon* v. *City of Butte,* supra, recognized such a distinction, and therein the court quoted with approval from 2 Dillon on Municipal Corporations, fifth edition, section 827, as follows: "Upon the receipt of the assessment the city becomes liable to the contractor as for money received to his use."

In the recent case of *State ex rel. Clark* v. *Bailey,* 99 Mont. 484, 44 Pac. (2d) 740, 744, this court also considered a situation very similar to that presented here. In the course of that opinion the court said: "The office of city treasurer is a continuing one, regardless of the person who may occupy it at any particular time, and the contention that the defendant in this action was not the person who held the office when the funds embezzled were received is not material. The city must answer for the illegal acts of its servants. * * * The city, and not the treasurer, is liable to the bondholder here." Again, in the same case, the court stated that: "A fund that is derived from a special levy or one created for a specific purpose is in the hands of municipal officials in trust. The municipality is merely a custodian, and its duties relative to such funds are purely ministerial. It may not use or divert them."

In the case of *Potter* v. *New Whatcom,* 20 Wash. 589, 56 Pac. 394, 395, 72 Am. St. Rep. 135, the court said: "If no assessment had been made under the contracts for the local improvements, and no money collected, the action would not lie; but, as the money has been collected and misapplied by the city, it can be recovered by the warrant holder." After money of that kind has been collected it is tax money in the

possession of the city.   (Compare *Thomas* v. *City of Missoula*, 70 Mont. 478, 226 Pac. 213.)

In the light of the foregoing authorities, it is manifest that in paying the warrants the city treasurer was not, as defendant contends, acting as the agent of the warrant holders.

Defendant suggests that to hold the city liable in this case ▮▮▮ would cause it to lend its credit to the payment of the special improvement warrants, and would result in a violation of section 1 of Article XIII of the Constitution of Montana. If this were a case in which the improvement district had not paid out, and an attempt had been made to require the city to reimburse the warrant holders out of the general fund, that constitutional provision might apply.   It does not apply here, because the city is charged with having received the money for the use of the warrant holders.   When it so received that money, it became a trustee.   Now it is being sued for negligence on account of its violation of that trust.   The city must answer for its negligence in handling the trust funds. (See *State ex rel. Clark* v. *Bailey*, supra; *Potter* v. *New Whatcom*, supra; *Northwestern Lumber Co.* v. *Aberdeen*, 44 Wash. 261, 87 Pac. 260.)

We are likewise of the opinion that no merit inheres in the contention that the city is not liable because the treasurer was acting in a governmental capacity and because the duties of the treasurer were purely statutory.   What we have already said with reference to the contention that the treasurer was agent of the warrant holders is largely determinative of the propositions thus advanced.   In this case these matters certainly offer no greater obstacle to holding the city to liability than they did in the case of *State ex rel. Clark* v. *Bailey*, supra, In that case we said: ''We are not impressed by the argument that 'the city of Red Lodge did not receive this money' when the record shows, and the defendant admits, that O. J. Simmons, a former city treasurer, regularly received from the county treasurer $2,000 for the credit of special improvement district No. 27, gave his receipt therefor as such city treasurer,

and by embezzlement of funds and manipulation of his books failed to have his books show the additional credit of $2,000. The contention that the city did not receive the funds is not entitled to serious consideration. If the $2,000 was not in the custody and possession of the municipality when it was regularly lodged in the possession of the city treasurer, what other act was necessary to perfect such custody? No other official or board had any legal right to receive or retain possession of city funds, and no other city official could be held responsible for the safe-keeping of such funds." And so we say here, as we did in the case of *State ex rel. Clark* v. *Bailey,* supra, that "the city must answer for the illegal acts of its servants."

This brings us to the question raised concerning defendant's plea of the statute of limitations. Defendant takes the position that plaintiff had at all times an interest in the fund created by the taxes levied upon the special improvement district, and that in 1925, when warrant No. 39 was paid a second time, plaintiff had such an interest in this fund and had an immediate right of action. In other words, defendant contends that the statute of limitations began to run from the time the warrant was wrongfully paid a second time, or at least from the time plaintiff had notice of such second payment. Plaintiff, on the other hand, contends that it is immaterial whether he had knowledge of the wrongful second payment of warrant No. 39 or not; that even if he had actual knowledge of the misappropriation at the time it occurred, still he could not have had a cause of action until December, 1930, a time within any statutory period pleaded by defendant. In this connection plaintiff points out that the city was collecting money into the fund as late as December, 1930, and that the last assessment was made in 1930. The record also discloses that if no delinquencies had occurred in the payment of the special improvement district taxes, plaintiff's warrant No. 33 could have been paid in spite of the fact that warrant No. 39 had been paid twice. Hence plaintiff argues that he

was not bound to anticipate that delinquencies would occur, and that he had no immediate cause of action until it finally became apparent that his warrant could not be paid.

We think the position taken by plaintiff in this regard is sound. It is sustained by the language of this court in the case of *State ex rel. Clark* v. *Bailey,* supra, in which the court said: "The city treasurer is the custodian of all city funds, including those in special improvement districts, and he is charged by the statutes with the duty of calling such warrants (or bonds) as those involved here when funds are available. When the date of payment is uncertain and dependent on the call of the city treasurer, the statute of limitation does not begin to run until the 'call of the treasurer, or until the holder had an immediate cause of action.'" The record in this case discloses that plaintiff's warrant No. 33 was never called by the city treasurer; and that prior to 1930, at least, there had never been a disavowal or a repudiation of warrant No. 33, or an indication that that warrant would not be paid. Indeed, within a time as late as the year 1932 a claim, presented to defendant by plaintiff for payment of warrant No. 33, was approved and "laid on the table until such time as there" should be "sufficient funds in improvement district No. 15 to pay the warrant." Thus it is clear that up to that time the defendant made no repudiation of or refusal to pay the warrant. Moreover, it appears that up to 1934 plaintiff continued to receive interest upon the warrant.

As we have already indicated, the fund as it was accumulated was held by the city as a trust fund for the warrant holders. While it was not in the strict sense of the word an express trust, the rule, we think, with respect to the running of the statute of limitations in such cases has a reasonable and practical application. It has been very generally held that, as between the trustee and the beneficiary of an express and continuing trust, the statute of limitations does not run until the trust has been clearly and unequivocally repudiated, and until notice of such repudiation has been received

by the beneficiary. (*Mantle* v. *Speculator Min. Co.,* 27 Mont. 473, 71 Pac. 665; *MacMullan* v. *Kelly,* 19 Cal. App. 700, 127 Pac. 819. See, also, notes in 13 Ann. Cas. 1165 and 3 Ann. Cas. 200.) This we consider merely an additional reason for holding that plaintiff's action herein was not barred by any of the statutes of limitation pleaded by defendant. As we have already indicated, the language of this court in the case of *State ex rel. Clark* v. *Bailey,* supra, is itself sufficient to dispose effectively of defendant's contentions regarding the application of the statute of limitations.

No error can be predicated upon the court's action in sustaining the demurrer. It follows from what we have said that under the facts and circumstances disclosed in this case, the city may be held liable for the wrongful second payment of warrant No. 39. The judgment must be, and it is hereby, affirmed.

ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS and MR. JUSTICE MATTHEWS, being absent, did not hear the argument and take no part in the above decision.